HELEN M. LUTTER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5658–71. Filed February 27, 1974.

*J. Nelson Young*, for the petitioner.
*James D. Thomas*, for the respondent.

GOFFE, *Judge:* The Commissioner determined a deficiency in the Federal income tax of petitioner in the amount of $227 for the taxable year 1969. The sole issue presented for decision is whether the petitioner furnished over half of the support of her two minor children, thus entitling her to dependency exemptions for them under section 151 of the Internal Revenue Code.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated herein. Helen M. Lutter, hereinafter referred to as petitioner, resided in Urbana, Ill., at the time of filing her petition in this proceeding. Her Federal income tax return, a separate return filed as a married person, for the taxable year 1969, was filed with the district director of internal revenue at Springfield, Ill.

Throughout 1969 petitioner's two minor children, Vincent and Lorna, ages 15 and 9, respectively, resided with her in an apartment located in Champaign, Ill. The petitioner was married, but her husband did not reside with her and did not contribute toward the support of the children. During the taxable year 1969 the petitioner received "Aid to Families with Dependent Children" (ADC) benefit payments in the amount of $2,153.97, and medical assistance in the amount of $439.87 from the State of Illinois, pursuant to the provisions of subchapter 4, part A, of the Federal Social Security Act and article 4 of the Illinois Public Aid Code. The medical assistance payments were made directly to the persons providing the medical care. Neither the petitioner nor her children received additional income or financial support from any other source during the taxable year except

---

[1] All statutory references are to the provisions of the Internal Revenue Code of 1954, as amended.

a salary earned by petitioner in the amount of $2,442.65 from the University of Illinois. Petitioner would not have been entitled to the grants unless she had dependent children. The welfare benefits were applied by petitioner approximately equally for the support of petitioner and her children.

Grant payments and medical assistance received by petitioner in 1969 met the requirements for funding by the Federal Government pursuant to the provisions of the Social Security Act and the applicable regulations issued by the Department of Health, Education, and Welfare.

The Champaign County Department of Public Aid, from whom petitioner received her ADC payments, never found it necessary to resort to the protective payee device or any other measure in petitioner's case to ensure that the payments would be used in the best interests of petitioner's children. Protective payments are payments made in behalf of the child to a designated person who is interested in or concerned with the welfare of the child and its family. The substitute payee may spend the grant for the child or personally supervise the parent or relative in the use of the grant, depending upon the circumstances of each case. Such payments may be resorted to in cases only when it has been clearly determined that a recipient of a grant persistently mismanages his or her assistance payments to the detriment of the children.

Evidence of mismanagement of funds must be specific and include the following factors: (1) Continued inability to plan expenditures wisely and to spread necessary expenditures over the usual assistance planning period; (2) persistent and deliberate failure to meet obligations for rent, food, school supplies, and/or other essentials; (3) repeated evictions or incurrence of debts with attachment or levies made against current income; and (4) continued evidence that the children are not properly fed or clothed and that expenditures for them are made in such a way as to threaten their chances for healthy growth and development.

The number of individuals for whom protective payments are made who can be counted as recipients for Federal financial participation in any month is limited to 10 percent of the number of other ADC recipients in the State for that month. The State may determine a percentage limitation to be utilized in its administrative subdivisions if the percentage limitation for the State as a whole is not exceeded.

Petitioner was aware of her obligation to use the ADC payments for the benefit of her children. However, she received no directions from the Illinois Department of Public Aid with respect to amounts she was permitted to spend for rent, food, clothing, or other items, nor was she required by such department to make an accounting to the department with respect to such expenditures. She was free to spend the

grant payments for the benefit of her children in any manner that she saw fit. The money could be used for her living expenses if such expenditures were in the best interests of her children.

The petitioner served the Champaign County Department of Public Aid as a volunteer worker in assisting other recipients of ADC grant payments who requested help in resolving problems of budgeting and financial management.

In his statutory notice of deficiency the Commissioner disallowed the dependency exemptions claimed by petitioner with the explanation that "Since State benefit payments are based solely on need, welfare payments to an individual are considered as having been spent by the recipient for his support, regardless of how the payments were utilized. Therefore, the exemption claimed is not allowable."

### OPINION

The precise question presented is whether ADC payments and medical assistance from the State of Illinois received by petitioner for her children constitute support of the children by petitioner for purposes of deductions for dependency exemptions under section 151. There is no dispute as to the facts. If such payments represent support furnished by petitioner to her children, she has furnished over half of their support and is entitled to the deductions because she otherwise qualifies.

The Federal and Illinois statutes providing for the payments received by petitioner provide an insight into the question presented here.

The Social Security Act provides for appropriations for ADC grants and child welfare services to enable each State to furnish financial assistance, rehabilitation, and other services as far as practicable under the conditions in that State, to needy dependent children and the parents or relatives with whom they are living. 42 U.S.C. secs. 601–610. The purposes of the grants are to encourage the care of dependent children in their own homes or in the homes of relatives; to help maintain and strengthen family life; and to help such parents or relatives attain or retain the capability for the maximum self support and personal independence consistent with the maintenance of continuing parental care and protection. The term "aid to families with dependent children" is defined in the Act as follows:

(b) * * * money payments with respect to, * * * medical care in behalf of or any type of remedial care recognized under State law in behalf of, a dependent child or dependent children, and includes (1) money payments or medical care or any type of remedial care recognized under State law to meet the needs of the relative with whom any dependent child is living * * *, and (2) payments with respect to any dependent child (including payments to meet the needs of the relative, and the relative's spouse, with whom such child is living, and the needs of any other individual living in the same home if such

needs are taken into account in making the determination under section 602(a) (7) of this title) which do not meet the preceding requirements of this subsection, but which would meet such requirements except that such payments are made to another individual who (as determined in accordance with standards prescribed by the Secretary) is interested in or concerned with the welfare of such child or relative, or are made on behalf of such child or relative directly to a person furnishing food, living accommodations, or other goods, services, or items to or for such child, relative, or other individual, but only with respect to a State whose State plan approved under section 602 of this title includes provision for—

(A) determination by the State agency that the relative of the child with respect to whom such payments are made has such inability to manage funds that making payments to him would be contrary to the welfare of the child, and, therefore, it is necessary to provide such aid with respect to such child and relative through payments described in this clause (2) ;

(B) undertaking and continuing special efforts to develop greater ability on the part of the relative to manage funds in such manner as to protect the welfare of the family ;

(C) periodic review by such State agency of the determination under clause (A) to ascertain whether conditions justifying such determination still exist, with provision for termination of such payments if they do not and for seeking judicial appointment of a guardian or other legal representative, as described in section 1311 of this title, if and when it appears that the need for such payments is continuing, or is likely to continue, beyond a period specified by the Secretary ;

(D) aid in the form of foster home care in behalf of children described in section 608(a) of this title ; and

(E) opportunity for a fair hearing before the State agency on the determination referred to in clause (A) for any individual with respect to whom it is made ; [42 U.S.C. sec. 606(b).]

The Social Security Act provisions relating to ADC payments provide that if a State agency has reason to believe that any ADC payments are not being used or may not be used in the best interests of the child, the State agency may provide for counseling and guidance services with respect to the use of such payments and the management of other funds by the relative receiving the payments as deemed advisable "in order to assure use of such payment in the best interests of such child." The State agency may also provide for warning such relative that continued failure to use the payments for the child's benefit will result in (1) the substitution of protective payments as outlined in section 606(b)(2), 42 U.S.C.; (2) the seeking of the appointment of a guardian or legal representative; or (3) the imposition of criminal or civil penalties authorized under State law if it is judicially determined that the relative is not using or has not used the payments for the benefit of the child.

The Illinois Public Aid Code provides that if the ADC payments for basic maintenance are not being used in the best interests of the child and the family and if there is a present or potential damage to the standards of health and well-being which the grant is intended to assure, counseling and guidance services must be provided the parent or relative with respect to the use of the grant and the management

of other funds available to the family as necessary "to assure use of the grant in the best interests of the child and family." If mismanagement of the grant continues, the county department is required to initiate one of the following actions:

1. Provide for protective payment to a substitute payee.
2. Provide for issuance of the grant, wholly or in part, in the form of disbursing orders.
3. File a petition under the "Juvenile Court Act" for an Order of Protection for the child.
4. Institute a proceeding for the appointment of a guardian or legal representative for the purpose of receiving and managing the public aid grant.
5. File a neglect petition requesting the removal of the child.

It appears to us that the primary purpose of the statutes, both Federal and Illinois, is to protect dependent children by payments to the parents or relatives with whom they reside.

The payments depend upon the existence of dependent children; they may be paid to someone other than the parent for the benefit of the child; and the payments are based upon the number of children and are earmarked for the children.

The parties here disagree on the purpose of the statutes described above. Petitioner contends that the statutes are designed to protect the family unit by giving to the parent funds to insure that the family may remain together to best provide for all the needs of the child. Such funds, reasons petitioner, constitute support of the child furnished by the parent. Respondent contends that the funds are provided by the Government directly to the dependent child by entrusting in the parent, or other relative, wise expenditures of the funds for the benefit of the child.

Both parties stress the importance of the provisions for insuring that the payments are expended for the best interests of the dependent child. The States are required to provide for protective payees in the event the parent does not show sufficient responsibility in expending the funds for the benefit of the child. 45 C.F.R. sec. 234.60 (1972).

We agree with respondent that the parent is, in effect, accountable to the State for the expenditures for the benefit of the child. It is true that the parent receiving the ADC payments has the freedom to determine day-to-day expenditures, and we recognize that the status of the parent is not that of a trustee or a guardian as being chargeable for past wrongdoing. Nevertheless, the wisdom of the parent in applying the funds for the benefit of the child is subject to scrutiny and lack of responsibility is dealt with prospectively.

Petitioner attaches significance to the fact that Illinois law imposes a legal duty on all parents to support their minor children, regardless of the source of support. We recognize the existence of such a duty but point out that the Illinois courts apply such sanctions as they may deem appropriate in each case. The sanctions provided for ADC, how-

ever, are distinct from the sanctions imposed for failure to support; they are imposed upon the unwise expenditure of ADC funds, not the failure of the parent to generally provide for the child's support.

Petitioner stresses the fact that the protective payee provision is an extraordinary measure sparingly applied and was not applied in her case. However limited the provision might be, it nevertheless exists. The extent of its application and its application to petitioner's situation do not detract from its obvious purpose to protect the interests of the dependent child.

Petitioner asserts that she had a legally enforceable economic right to receive the welfare benefits under the holding of *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), and that the payments must be accorded the same status as additional earnings or gifts received by petitioner which were applied to the support of herself and her children. She emphasizes that she enjoyed the same degree of freedom and control with respect to the expenditure of the ADC funds as do other parents in the expenditures of their resources for their family support.

*Goldberg* v. *Kelly*, *supra*, involved the very narrow constitutional question of whether the due process clause of the 14th amendment required an evidentiary hearing before welfare benefits could be terminated. The Supreme Court held that such a hearing was required to insure continuation of the recipient's bare necessities and such consideration outweighed the Government's interest in a summary adjudication. The Court in a footnote at 397 U.S. 262 fn. 8, observed that welfare benefits should be regarded as a property rather than a gratuity. The Court did not, however, determine the recipient of the benefit although it may have described the nature of the benefit. Our conclusion that the benefit belongs to the dependent child, not the parent, does not conflict with the rationale of *Goldberg* v. *Kelly*, *supra*.

We see little difference between ADC benefits for the child paid to the parent and support in kind furnished by an institution.

We held in *Hazel Newman*, 28 T.C. 550 (1957), that although only the taxpayer paid funds to certain institutions for the support of her niece and nephews, she was not entitled to claim the minor children as exemptions because such payments constituted less than one-half of the total dollar value of the support provided by the institutions. See also *John L. Donner, Sr.*, 25 T.C. 1043 (1956).

We hold, therefore, that the ADC benefits were received by petitioner for the benefit of her minor children and constitute "support" by the State of Illinois, not "support" furnished by petitioner. Petitioner has, therefore, not furnished over one-half of the support of her two minor children and is not entitled to claim them as dependents on her Federal income tax return for the taxable year 1969.

*Decision will be entered for the respondent.*