CHARLES R. JELM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jelm v. Commissioner
Docket No. 851-73.
United States Tax Court
T.C. Memo 1975-20; 1975 Tax Ct. Memo LEXIS 352; 34 T.C.M. (CCH) 100; T.C.M. (RIA) 750020; February 6, 1975, Filed John Kennedy Lynch, for the petitioner. James E. Dunn, Jr., for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: The Commissioner determined the following deficiencies in and additions to petitioner's income taxes: ADDITIONS TO TAX Year
Deficiency
Sec. 6653(b)
Sec. 6654
Sec. 6651(a)
Sec. 6653(a)
1957
$1,799.66
$899.83
$50.03
1958
790.66
395.33
22.47
1959
936.50
468.25
26.61
1960
1,161.42
580.71
1961
585.68
292.84
1962
498.51
249.26
1963
989.37
494.69
1964
1,497.59
$75.30
1965
819.48
1966
660.44
$75.51
33.30
1967
690.94
The sole question for decision is whether, when support was furnished pursuant to an agreement whereby petitioner released certain claims in exchange for promises to support petitioner's children, that support was "received from" petitioner within the meaning of section 152(a) [1] and "[provided]" by petitioner within the meaning of section 152(e)(2)(B)(i). This case was fully stipulated pursuant to Rule 122, Tax *354 Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below. Petitioner is an individual whose residence at the time of the filing of the petition herein was Taipei, Taiwan. For the taxable year 1958 and the years 1961 through 1967, petitioner filed federal individual income tax returns with the district director of internal revenue, Cleveland, Ohio. All returns filed were timely with the exception of the 1966 return, which was delinquently filed. Petitioner did not file returns for the taxable years 1957, 1959, and 1960. On his returns for 1958, 1961, 1962, and 1963, petitioner claimed exemptions for his four minor children, Camilla, Cheryl, Charles, and Cara. On his returns for the years 1964 through 1967, petitioner claimed exemptions for two of his children, Charles and Cara. Prior to 1952, petitioner was married to Patricia Laursen Jelm (hereafter Patricia), and the four children referred to above were born of that marriage. In August 1952, petitioner was divorced from Patricia, to whom custody of the four children was given. The Journal Entry dissolving the marriage of petitioner and Patricia incorporated an agreement *355 dated August 26, 1952, signed by petitioner, Patricia, John D. Helbig (hereafter Helbig), and Patricia's mother, Pearl Laursen (hereafter Laursen). The agreement contains the following pertinent provisions: AGREEMENT
THIS AGREEMENT made and entered into this 26th day of August, 1952, at Akron, Ohio, by and between the following contracting parties: CHARLES R. JELM, hereinafter referred to as JELM; JOHN D. HELBIG, hereinafter referred to as HELBIG; PATRICIA LAURSEN JELM, hereinafter referred to as PATRICIA; and MRS. PEARL LAURSEN, all of Summit County, Ohio. * * * * * WHEREAS, Jelm has sued Helbig for alienation of affections and criminal conversation, and, WHEREAS, certain additional claims have been asserted on behalf of Jelm against other persons for claimed participation in the alienation of the affections of his wife, which additional claims have not culminated in litigation, and, WHEREAS, the parties, for the benefit not only of themselves, but more particularly for the benefit of the Jelm children, as well as various parents of those hereinbefore mentioned and others who might be involved in litigation, desire to settle all claims for damages and put an *356 end to all future litigation, NOW, THEREFORE, in consideration of their mutual and several promises hereinafter contained, it is agreed: JELM AGREES
(1) To release and forever discharge Patricia, Mrs. Pearl Laursen, Helbig, the parents of Helbig, and any and all other persons whomsoever, from any and all liability in any way arising, claimed to have arisen, or which might hereinafter be claimed to have arisen, out of or by reason of the marriage relationship between Jelm and Patricia, or any interference therewith, so that hereafter there shall not be available to Jelm any claim of any character whatsoever, which by any possibility might result in litigation with respect to any cause of action of any character whatsoever against any of the persons hereinbefore mentioned or against anyone else which litigation is to any extent based upon said marriage relationship, excepting only the right to enforce by appropriate action any and all of the terms and conditions of this agreement, and the obligation properly to rear and support the Jelm children. * * * * * (6) To dismiss the proceeding instituted in the Common Pleas Court of Summit County, Ohio, against Helbig. *357 HELBIG AGREES
(1) To support and educate the four Jelm children until they become of legal age, or are married or self-supporting, and to furnish medical, dental, hospital, ocular and surgical care and attention for said children. The support of and other services for the children shall be deemed to be part of the damages to Jelm for the claimed criminal conversation and alienation of affections of Patricia by Helbig. * * * * * (5) To pay the court costs in the alienation suit. PATRICIA AGREES
(1) Patricia agrees to guarantee that Helbig will furnish to the Jelm children, and each of them, suitable home, food, clothing, medical, dental, optical and surgical care, and to pay for all such services and expenses, as would normally fall upon their father, and agrees to save Jelm harmless therefrom. * * * * * MRS. LAURSEN AGREES
(1) That she will guarantee the performance by Helbig and Patricia of the terms and conditions herein imposed upon Helbig and Patricia for the support and maintenance of the four Jelm children; and further agrees that for the purpose of avoiding the consequences of this, her guarantee, she will not alienate or permit the alienation *358 of her estate. It being understood that her guarantee runs solely to the provision covering the support of the Jelm children as agreed to by Helbig and Patricia, and is an obligation binding upon her only in the event of the death or failure of both Helbig and Patricia. COMMON AGREEMENTS
* * * * * (6) This agreement shall be binding upon the parties, their executors and administrators, and the dismissal of the action for alienation of affections and criminal conversation, as well as the release of the other actions contemplated by Jelm, is based upon not only the money consideration, but also upon the promise to furnish a home, in every sense of the word, for the Jelm children. On December 8, 1952, Patricia and Helbig were married, and, thereafter, the four children resided with them. During the years 1957 through 1967, Helbig, Patricia, and/or Laursen provided all of the total support of the children. During 1967, the total support for Charles and Cara was at least $1,200. The Commissioner determined that petitioner was not entitled to claim his children as dependents for those years in which they were minors. [2] Petitioner argues that, under the settlement agreement, *359 quoted in part above, he dismissed his suit against Helbig and discharged Patricia, Helbig, and Laursen from any liability in exchange for their promises to support the children. Petitioner argues that any support payments made by them (Patricia, Helbig and Laursen) were, as the agreement states, damages owed to petitioner and "received from" petitioner by the children within the meaning of section 152(a) and were "[provided]" by petitioner within the meaning of section 152(e)(2)(B)(i). The Commissioner relies on Charles R. Jelm,T.C. Memo. 1972-197, where we held that petitioner was not entitled to an exemption for Cara in 1968. In that case, we said (31 T.C.M. at 994, 41 P-H Memo T.C. at 72-1039): The petitioner's claim to a dependency deduction, as a divorced parent not having custody of the child, is governed by section 152(e)(2)(B) which requires that such parent must have contributed $1,200 or more for the support of such child. Since there has been no judicial determination or agreement by the parties with respect *360 to the amount of damages, if any, to which petitioner was entitled, even if we were to accept petitioner's argument that such damages were applied to the support of Cara, there is no basis for determining the amount so applied. Accordingly, it cannot be said that petitioner supplied as much as $1,200 towards such support. Having thus failed to satisfy the requirements of the statute, the petitioner is not entitled to the dependency deduction provided by section 151. The Commissioner's reliance on that case is not justified. Section 152(e)(2)(B) governs none of the years involved herein except 1967. Section 1.152-4(a), Income Tax Regs. The Commissioner's stipulation that "at least $1,200.00" was spent in support of the children in that year distinguishes the instant from the earlier case. For years prior to 1967, section 152(a) simply requires proof that "over half of * * * [the children's] support was received from" petitioner. We do not believe that, under section 152(a), where petitioner argues that he provided all of the support, he is also obliged to prove specific dollar amounts paid. We hold that petitioner is entitled to the exemptions. Under the settlement agreement, *361 petitioner released certain claims in return for promises by others to support his children. The agreement stated, "The support of and other services for the children shall be deemed to be part of the damages to Jelm for the claimed criminal conversation and alienation of affections of Patricia by Helbig." The Commissioner does not argue that the claims released were not equal in value to the promises made, and we can conceive of no reason why Helbig, who, prior to executing the agreement, had no obligation to the children, would assume their support unless he received value in return. Petitioner arranged for the future support of the children by relinquishing his claims in return for binding promises to make support payments in lieu of damages. Citing section 1.152-1(a)(2)(iii), Income Tax Regs., and Rev. Rul. 58-303, 1958-1 C.B. 61, the Commissioner argues that, if petitioner had made a lump-sum payment to establish a trust fund or to create a contractual liability, he would have been entitled to claim the exemptions, but, since petitioner did not transfer money and did not establish a trust, he is not entitled to the exemptions. We see no reason to deny the *362 exemption simply because petitioner never transferred cash to his children or to Helbig, Patricia, and Laursen. Petitioner relinquished his apparently valuable claims for damages. We think payments made in consideration of that relinquishment represent petitioner's "funds" no less than payments made pursuant to a contract entered into for cash as inRev. Rul. 58-303. Petitioner released his claims for damages, presumably payable in cash, for the benefit of his children and, we believe, thereby provided for their support. Moreover, we do not analogize petitioner's settlement to a lump-sum payment in that year and do not believe that petitioner's release of claims in 1952 was a "payment" within the meaning of section 1.152-1(a)(2)(iii)(b), Income Tax Regs. The value of the consideration for the release was indefinite since the amount of future support was, as the Commissioner admits, uncertain. Petitioner was not obligated to take account of support payments until the year they were made. Section 1.451-1(a), Income Tax Regs. See, also, the reasoning of Burnet v. Logan,283 U.S. 404 (1931), and Estate of Raymond T. Marshall,20 T.C. 979 (1953). *363 [3] Any "payments" made by petitioner were not made prior to the years in which Helbig, Patricia, and Laursen spent amounts for the support of the children. We think, in other words, that those amounts must be treated just as if they were paid to petitioner, who used them for the support of the children. We believe that, if the settlement had been taxable, petitioner would have been taxed on those amounts annually in that way, and we see no reason to treat those amounts differently in determining dependency exemptions. Helen M. Lutter,61 T.C. 685 (1974), on appeal (C.A. 7, May 6, 1974), which the Commissioner cites, is not pertinent. There we held that welfare payments for the benefit of children were not support provided by the parents. Nothing in that case indicates that the parents relinquished valuable rights to obtain the payments. We have concluded that petitioner relinquished rights of value comparable to the support payments *364 and that those payments were provided in lieu of damages owed to petitioner. Accordingly, petitioner's children "received from" petitioner that support furnished by Helbig, Patricia and Laursen, and petitioner "provided" all of the children's support for the years in issue. We hold that, under sections 151 and 152, petitioner is entitled to claim his children as dependents. In conclusion we point out that in his reply brief respondent admits "if specific money damages had been paid directly to petitioner we might well have a different case." We don't think this "cash on the barrelhead" approach is called for under the facts of this case. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. Camilla became 21 in 1965, and Cheryl became 21 in 1966. Throughout the years in controversy, Charles and Cara were minors.↩
3. We do not suggest that damage payments are includable in petitioner's gross income. See $1 Dudley G. Seay, 58 T.C. 32, 40 (1972), and Sol. Op. 132 I-1 C.B. 92 (1922). See also C. A. Hawkins,6 B.T.A. 1023↩ (1927).