ELI C. LEGGETT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leggett v. Commissioner
Docket No. 3103-73
United States Tax Court
T.C. Memo 1976-7; 1976 Tax Ct. Memo LEXIS 394; 35 T.C.M. (CCH) 21; T.C.M. (RIA) 760007; January 8, 1976, Filed Eli C. Leggett, pro se. James E. Keeton, Jr., for the respondent. WILBUR
MEMORANDUM FINDING OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's income tax for the tax year 1971 in the amount of $718. The issues for decision are whether petitioner is entitled *395 to the use of the "married filing jointly" status in computing his 1971 income tax liability and whether petitioner is entitled to six personal exemptions for dependent children in computing his 1971 income tax liability. FINDING OF FACT Petitioner was a resident of Detroit, Michigan at the time the petition was filed. Petitioner timely filed his 1971 individual income tax return upon which he claimed six personal exemptions for six of his children and calculated his tax using the married filing jointly status. Petitioner and Emmarell Leggett were married in November 1953. The marriage produced eight children, seven of whom were alive during the year in issue. [1] Petitioner and Emmarell separated in late 1969 and were divorced on September 29, 1972. During the 1971 tax year, Emmarell and the children resided on Monica Street in Detroit. The residence was purchased by Emmarell with governmental assistance in 1970. Pursuant to the assistance plan, Emmarell paid the mortgagee $112.98 each month and a government agency paid the mortgagee an identical *396 amount. None of the funds used to purchase the home were contributed by petitioner. The Monica residence was a brick home with four bedrooms, two baths and a full basement. The 1971 fair rental value of the home was $200 per month. One-half of this fair rental value constitutes support provided by a Government agency. Emmarell participated in a county assistance budget program with respect to electricity, gas and water expenses. Under this program, she would pay a budgeted amount monthly to the various utility companies and a county agency would semiannually pay the difference between the actual cost of the utilities consumed and the budget amount paid. During 1971 Emmarell paid $13 per month for electricity, $20 per month for gas, $8 every other month for water and $10 per month for telephone. Amounts approximately equal to those paid by Emmarell were paid by the county agency but no assistance was provided for the telephone. Every other week in 1971 Emmarell purchased food stamps in the face amount of $100 for $70. In addition to the food acquired with the food stamps, Emmarell spent $15 every other week for additional food and $20 every other week for non-food miscellaneous *397 items. Emmarell incurred transportation expenses in marketing every week. She rode the bus to the market at a cost of 40 cents and paid an individual $3 to transport her and her purchases home. Emmarell spent approximately $130 on clothing for each of her six oldest children and $75 for her youngest child during 1971. In addition, petitioner purchased clothing for the children in the total amount of $900. All medical and dental expenses were paid by a social service agency directly to the doctors and hospitals providing the services. Each of the seven children received a dental examination during 1971 and the four oldest children received dental treatment three additional times during the year. The social service agency was charged approximately $10 for each of these visits. Additionally, Eli, Jr. received medical attention about three times. Each incident resulted in charges of approximately $40. On each of the 186 school days of 1971 transportation and school lunches were provided by the city and the school system for the three oldest Leggett children. The cost of round trip transportation for each child was 50 cents and the cost of each lunch was 40 cents. Four of the children *398 were enrolled in athletic programs at the YWCA and the YMCA. One enrollment cost $7.50 annually and the other three enrollments cost $3.50 annually. The children would participate in these programs at least once a week. Round trip transportation to the facilities cost 80 cents. In addition, Emmarell gave each of her four oldest children $5 per month for miscellaneous recreation. Emmarell also purchased Christmas gifts totaling $100 for her children in 1971. In 1971 Emmarell received $5,832 in aid to dependent children payments from the Michigan Department of Social Services. This amount does not include any direct or indirect contributions by petitioner. Emmarell also earned $600 from participation in a Christmas savings club. The income from the savings club was not reported on petitioner's 1971 tax return. Petitioner had income totaling $6,231.44. Additionally, petitioner received $4,156.50 in settlement of a workmen's compensation claim. Although the joint income tax return, bears a signature purporting to be Emmarell's, she did not sign or authorize anyone else to sign the return on her behalf or intend that petitioner's 1971 return be considered her return. OPINION *399 The first issue for decision is whether petitioner is entitled to use the "married filing jointly" status in computing his 1971 income tax liability. Section 6013(a) [2] allows a husband and wife to file a single joint return of income taxes. The return must, however, be signed by both spouses. Section 1.6013-1(a)(2), Income Tax Regs. Although petitioner's 1971 income tax return bears a signature purporting to be that of petitioner's wife, Emmarell Leggett did not sign or authorize anyone to sign the return on her behalf nor did she intend to file a joint return with petitioner. Since the signature appearing on the return is not that of petitioner's wife, petitioner is not entitled to use the "married filing jointly" status on his 1971 tax return. The only other issue is whether petitioner is entitled to six personal exemptions for six of his children. Section 151(e) provides an exemption for each dependent whose income is less than $750 or who is a child of the taxpayer and either has not yet reached the age of 19 or is a student. Section 152 further refines the definition of dependent *400 to require that the taxpayer provide over one-half the support of the individual claimed as a dependent. Respondent contends that since petitioner did not provide half the support for any of the Leggett children, he is not entitled to the six personal exemptions. We agree. Section 1.152-1(a)(2)(i) of the Income Tax Regs. requires that the amount of support provided by the taxpayer be compared to the total support provided the dependent from all sources in order to determine whether the taxpayer provided more than half the support of the individual. Support includes food, shelter, clothing, medical and dental care, education and recreation. Payments made by a state agency to or on behalf of the dependent constitute support provided by the agency rather than by either parent. Helen M. Lutter,61 T.C. 685 (1974). The record indicates that the children petitioner claimed as dependents received most of their support from the various public assistance programs of which they were qualified beneficiaries. Petitioner has been unable to demonstrate that he provided over one-half of the support for any of the six children claimed as a dependent. Consequently, we must *401 sustain respondent's disallowance of the six personal exemptions. Decision will be entered for the respondent.
Footnotes
1. The children's names, in order of descending age, are Janice, Eli, Jr., Emmarell, Dennis, Chiquita, Pamela, and September.↩
2. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩