HERBERT BYRD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Byrd v. Commissioner
Docket No. 12928-83.
United States Tax Court
T.C. Memo 1986-385; 1986 Tax Ct. Memo LEXIS 221; 52 T.C.M. (CCH) 220; T.C.M. (RIA) 86385; August 19, 1986. Donald F. Van Cook, for the petitioner. David Goldberg, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioner's 1981 Federal income tax in the amount of $6,507 and an addition to tax under section 6653(a)[1] in the amount of $325.35. After concessions, the issues for decision are: (1) whether petitioner is entitled to a charitable contribution deduction in the amount of $13,977; (2) whether petitioner is entitled to dependency exemptions for six of his children; (3) whether petitioner may calculate his tax *223 liability by claiming "head of household" filing status; and (4) whether petitioner is liable for the additions to tax under section 6653(a). Some of the facts have been stipulated; this reference incorporates herein the stipulation of facts and attached exhibits. During the year in issue (1981), as well as the date on which the petition was filed, petitioner resided at 39 Brooklyn Avenue, Wyandanch, New York (the Brooklyn Avenue property). During 1981, he was employed, on a full time basis, by the Long Island Lighting Company ("LILCO") as a mechanic. Issue 1. Charitable Contribution Deduction
FINDINGS OF FACT On January 3, 1978, petitioner filed with the State of New York a Certificate of Incorporation (the Charter) for the Brooklyn Avenue Church of the Apostolic Faith (the Church) which stated as its purpose the preaching of religious doctrine. The Charter was amended on November 29, 1982, to include a dissolution clause, i.e., a statement that upon dissolution of the Church, its assets would be distributed "to such organization as shall qualify *224 under Section 501(c)(3) of the Internal Revenue Code of 1954, as amended, or to another organization to be used in such manner as in the judgment of a justice of the Supreme Court of the State of New York will best accomplish the general purposes for which this corporation was formed." No dissolution clause appeared in the original Charter, nor was the amendment made retroactive to 1981. The Church operated out of the Brooklyn Avenue property which petitioner individually owned. When petitioner purchased the Brooklyn Avenue property in 1976, he borrowed $32,250 from Allied Federal Savings & Loan Association of New York and executed a mortgage in that amount. The ground level of the Brooklyn Avenue property was subsequently dedicated for use by the Church -- the area contained folding chairs arranged in rows, a pulpit, an organ, and voice amplification devices. In addition, restrooms on that level were designed for public use, and a room was used as petitioner's study. The Church congregation averaged 20 adults at its regular Sunday services. During 1981, petitioner wrote checks totalling $10,654 to the Church, from his personal checking account; he claims *225 to have contributed another $3,338 to the Church in cash. These funds (totalling $13,992) represented the bulk of, if not the sole, support received by the Church during 1981. The Church maintained a checking account (over which petitioner had sole signatory control) at Marine Midland Bank. During 1981, the Church paid the mortgage and property taxes on the Brooklyn Avenue property as well as all utility bills. The Church also repaid petitioner's personal loan to a finance company. Petitioner used an automobile owned by the Church to commute to and from his job at LILCO; the Church paid for all the automobile expenses. In his 1981 return, petitioner deducted $13,992 [2] as a charitable contribution to the Church. Respondent disallowed this deduction claiming that: (1) the Church was neither organized nor operated exclusively for religious purposes; (2) Church funds were used for petitioner's benefit; and (3) petitioner did not relinquish dominion and control over the funds contributed to the Church. *226 OPINION Section 170(a) allows as a deduction a contribution or gift made within the taxable year to those entities described in section 170(c). To qualify as an entity described in section 170(c), the Church must satisfy both an organizational and operational test. Stephenson v. Commissioner,79 T.C. 995, 1002 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984); Section 1.501(c)(3)-1(a)(1), Income Tax Regs. If the Church fails to satisfy either test, it does not qualify. Here, the Church satisfied neither test. The Church failed to satisfy the organizational test because under its Charter, as in effect for 1981, its assets were not irrevocably dedicated to an exempt purpose. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.[3] The Church also failed to satisfy the operational test because its earnings inured to the benefit of a private individual (i.e., petitioner). [4] Sec. 1.501(c)(3)-1(c)(2). Many of petitioner's personal expenses, including the expense of maintaining his home (e.g., mortgage, *227 real estate taxes and utilities) were paid by the Church. Additionally, the Church-owned automobile was used by him to commute to and from his job at LILCO. In addition to failing both the organizational and operational tests, petitioner did not part with dominion and control over the monies contributed to the Church; he was the sole signatory over the Church's checking account. This factor alone also would result in the denial of a deduction to petitioner for his contributions to the Church. See Stephenson v. Commissioner,supra.
Although none of petitioner's contributions to the Church are deductible, he is permitted to deduct contributions made to other churches. These contributions were not specifically *228 contested by respondent at trial or on brief. From an examination of a list of checks written on petitioner's personal checking account, we conclude that he made, and is entitled to deduct, $320 in contributions to other churches, of which only $15 was allowed by respondent. Issue 2. Dependency Exemption
FINDINGS OF FACT In his 1981 return, petitioner claimed dependency exemptions for five children [5] from his former marriage to Ira Marie Byrd ("Ira"). That marriage was dissolved by a divorce decree entered October 8, 1975; Ira was granted sole custody of all the children. Petitioner also claimed a dependency exemption for Nicole, his child with Virginia Ann Hoyle. Three of petitioner's and Ira's children (Janet, Sheila and Rosetta) lived in part during 1981 with petitioner and in part with Ira. Their two youngest children (Patrice and Brenda) lived during all of 1981 with Ira. Nicole was in college in 1981 and lived in part with petitioner. During 1981, Ira received $8,025 in the form of aid to Dependent Children (ADC) *229 from the Suffolk County (N.Y.) Department of Social Services for support of her and petitioners' children. In addition, she received $1,820 from petitioner [6] as child support. Petitioner paid Nicole's college expenses and supported her. In support of his claim that he is entitled to six dependency exemptions, petitioner asserts that (1) three of his and Ira's five children (Janet, Sheila and Rosetta) lived with him for more than half of 1981; (2) the other two of his and Ira's five children were provided with court-ordered support payments for which he should be given credit; and (3) Nicole was in college and he supported her. Respondent disallowed all six of the claimed dependency exemptions on the basis that petitioner failed to prove that he provided over half of their support. OPINION A parent is allowed a dependency exemption for each child for whom the parent provides over half the yearly support. Sections 151(e) and 152. In determining whether the parent provided *230 over half the yearly support, the amount of support received from the parent must be compared to the entire amount of support provided the child from all sources. Sec. 1.152-1(a)(2)(i), Income Tax Regs. ADC payments made by a State agency on behalf of a child constitute support by the agency, and not by the parents. Lutter v. Commissioner,61 T.C. 685 (1974), affd. per curiam 514 F.2d 1095 (7th Cir. 1975), cert. denied 423 U.S. 931 (1975). In 1981, Ira received $8,025 in ADC payments and $1,820 from petitioner as child support. Ira did not testify; thus, we do not know how much she contributed to the support of her and petitioner's five children. On the record before us, we find that Ira and petitioner together did not contribute over half the support of any of their children; therefore, petitioner is not entitled to a dependency exemption for any of his children with Ira. [7]
*231 Petitioner testified that Nicole lived with him in 1981, leaving home only for the purpose of attending college in North Carolina. He further testified that he supported her. Respondent did not provide any evidence to contradict such testimony. Therefore, based on the record, we find that petitioner provided Nicole with over half of her support for 1981 and thus he is entitled to a dependency exemption for her. Issue 3. Head of Household Filing Status
FINDINGS OF FACT Petitioner filed his 1981 return on the basis of "head of household" filing status. Respondent claims that petitioner is not entitled to file using "head of household" status. OPINION A "head of household" is an individual who is not married at the close of the taxable year and who maintains as his home a household which constitutes for such taxable year the principal place of abode of an unmarried child. Section 2(b). A taxpayer is considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by him. The taxpayer and the unmarried child *232 must occupy the household for the entire taxable year, except for temporary absences due to special circumstances. The regulations include in the category of "special circumstances" a nonpermanent absence from the abode due to education, or due to a custody agreement "under which a child * * * is absent for less than 6 months in the taxable year of the taxpayer," if "(i) it is reasonable to assume that the taxpayer or such other person will return to the household, * * *" Sec. 1.2-2(c)(1), Income Tax Regs.
Our finding that petitioner supported Nicole during 1981 and that she lived with him except while attending college facilitates a finding that petitioner may file his 1981 return on the basis of "head of household." Nicole's attendance at college constituted a temporary absence from petitioner's household due to a special circumstance. Section 1.2-2(c)(1), Income Tax Regs.
Issue 4. Negligence Penalty
FINDINGS OF FACT Respondent asserts that petitioner's underpayment of tax was due to negligence or intentional disregard of the rules and regulations and seeks additions to tax under section 6653(a)(1) and 6653(a)(2). Petitioner *233 disagrees. OPINION The burden is on petitioner to prove that no part of his underpayment was due to negligence or intentional disregard of the rules or regulations within the meaning of section 6653(a). Bixby v. Commissioner,58 T.C. 757, 791 (1972). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967). Upon a careful review of the record, we conclude that the imposition of the negligence penalty is warranted and we therefore sustain respondent's determination on this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Petitioner also deducted interest on the mortgage ($2,614) and real estate taxes on the Brooklyn Avenue property ($2,305), both paid by the Church. Thus, he twice deducted the mortgage interest and real estate taxes.↩
3. The organizational test was satisfied only after the Church's Charter was amended on November 29, 1982 to include a dissolution clause. ↩
4. Petitioner's argument that the Church had no earnings, hence none of its earnings could have been used for his benefit, is without merit. Any use of Church property, including its funds, for the benefit of a private individual is proscribed. See Canada v. Commissioner,82 T.C. 973↩ (1984).
5. Janet, born May 17, 1961; Sheila, born Oct. 2, 1965; Rosetta, born Jan. 23, 1968; Patrice, born June 1, 1970; Brenda, born May 13, 1972.↩
6. The $1,820 was subtracted from petitioner's salary, at the rate of $35 a week, and remitted by LILCO to Ira.↩
7. Since we have concluded that Ira and petitioner combined did not contribute over half the support for any of their children, we need not determine which of them is entitled to the dependency exemption. See section 152(e)↩.