RICHARD SHARVY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1457–75. Filed January 10, 1977.

Richard Sharvy, pro se.
*Gary R. DeFrang,* for the respondent.

OPINION

DAWSON, *Chief Judge:* Respondent determined a deficiency of $344.59 in petitioner's Federal income tax for the year

---

1969. Petitioner concedes that he is not entitled to a dependency exemption for his son. The only issue for decision is whether petitioner provided at least one-half his support during the taxable years 1965 to 1968, inclusive, thus entitling him to compute his 1969 Federal income tax liability according to the income averaging provisions of sections 1301 through 1305.[1] The resolution of this issue turns on whether petitioner can treat National Defense Education Act fellowships, which are excludable from gross income, as representing support furnished by himself and not as support furnished by the grantor.

This case was submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure. All of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly. The pertinent facts are set forth below.

Petitioner Richard Sharvy was a legal resident of Eugene, Oreg., at the time of filing the petition herein. He filed a 1969 Federal income tax return and an amended return for that year with the Internal Revenue Service at Philadelphia, Pa., utilizing the income averaging provisions of section 1303.

In 1965 petitioner was 23 years old and a full-time student, a status he held from 1963 through June of 1968. He did not file a Federal income tax return in 1965.

Petitioner received no support from his family during the years 1965 through 1968, and he was not claimed as a dependency exemption by his parents for those years.

Petitioner was married, but lived apart from his wife, during the taxable years 1965 and 1966. He obtained a divorce during 1967.

In 1966 petitioner and his wife filed a joint Federal income tax return. All of the income reported on that tax return was earned by his wife, Victoria Sharvy.

Petitioner attended Wayne State University (hereinafter W.S.U.) in Detroit, Mich., from the fall of 1964 through June of 1968. During this period he received National Defense

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved, unless otherwise indicated.

Education Act (NDEA) fellowship funds in approximately the following amounts:

1964–65 school year $3,400
1965–66 school year  3,600
1966–67 school year  3,800

One thousand dollars of the NDEA fellowship received each school year represented stipends paid as dependency allowances for petitioner's wife, Victoria, and son, Peter Sharvy. Petitioner forwarded to his wife the $1,000 received during each of the 3 school years to help support her and their son, Peter.

From September 1967 through June 1968 petitioner was employed as a teaching assistant at W.S.U. During this period he received $1,000 per quarter for teaching. He also obtained student loans of $1,500 and $400 in June 1966 and December 1967, respectively. During a portion of 1968 petitioner served as an assistant professor at W.S.U. and received a salary of $2,833 for services rendered.

In summary, the total amounts received by petitioner during the years 1965 through 1968 were as follows:

|  | Calendar years | | | |
|---|---|---|---|---|
|  | 1965 | 1966 | 1967 | 1968 |
| Student loans | | $1,500 | $400 | |
| NDEA fellowship: | | | | |
| 1964–65 school year | $2,267 | | | |
| 1965–66 school year | 1,200 | 2,400 | | |
| 1966–67 school year | | 1,267 | 2,533 | |
| W.S.U.—teaching assistant | | | 1,000 | $2,000 |
| W.S.U.—assistant professor | | | | 2,833 |
| Interest income | | | | 54 |
| Totals | 3,467 | 5,167 | 3,933 | 4,887 |
| Less amounts disbursed to wife and son for support | 1,000 | 1,000 | 500 | — |
| Net amount received | 2,467 | 4,167 | 3,433 | 4,887 |

Petitioner treated all amounts received from his NDEA fellowships and all amounts received from his 1968 teaching assistantship as nontaxable income. As a result these amounts were excluded by petitioner in computing his gross income and, thus, were omitted on his income tax returns. The assistantship funds were treated as nontaxable income under section 117(b)(1) because all candidates for Ph.D.

degrees in philosophy at W.S.U. were required to perform at some time as teaching assistants.

For the taxable years 1965 through 1968, petitioner filed returns and reported taxable income as follows:

1965—No return filed.

1966—Taxable income of $1,925.92 reported on joint return filed with wife. All reported taxable income attributable to petitioner's wife.

1967—Return filed, no taxable income reported.

1968—Return filed reporting taxable income of $1,987, computed as follows:

| Gross: | | |
|---|---|---|
| | W.S.U. teaching............ | $2,833 |
| | Interest income............ | 54 |
| | Total .............................. | 2,887 |
| Less: | | |
| | Exemption (1)................ | (600) |
| | Minimum standard deduction .................... | (300) |
| | Taxable income ............ | 1,987 |

The Internal Revenue Service did not audit petitioner's 1966, 1967, and 1968 Federal income tax returns. No adjustments were made and no statutory notices of deficiency were issued by the Internal Revenue Service for these years.

On his 1969 income tax return, petitioner reported $8,833.32 as income from wages. This amount was received as compensation for teaching during the calendar year 1969 at W.S.U. and at Swarthmore College, Swarthmore, Pa.

Petitioner and respondent are in agreement, for purposes of this case, (1) that the net amounts set forth in this case were expended for and constitute petitioner's total support during each of the base period years; (2) that, based on petitioner's 1968 wage income, he provided at least one-half of his own support for that year; and (3) that the fellowship and teaching assistantship were properly excluded from gross income.

Petitioner contends that when a "no-strings," tax-exempt fellowship is provided by a grantor to an individual, these funds become the property of the grantee to do with what he wishes. When these funds are later expended for support items, they constitute support furnished by the recipient, and not by the grantor, since the funds were originally unrestricted. Applying this standard, petitioner concludes that

the NDEA fellowships he received during 1965, 1966, and 1967 were not specifically provided for his support. Thus, petitioner argues that the support items acquired with these funds do not constitute support provided by the grantor, but instead represent support which petitioner provided himself.

Respondent rejects that contention and asserts that because the fellowship amounts were properly excluded from gross income, they represent disinterested, "no strings" educational grants within the rationale of *Bingler v. Johnson*, 394 U.S. 741, and section 117, given to petitioner for the purpose of allowing him to pursue his education. As such, these amounts do not represent support which petitioner furnished himself.[2] As a result respondent maintains that petitioner (and, until their divorce in 1967, his spouse) did not provide one-half of his support in the base period years 1965, 1966, and 1967, and, thus, is precluded by section 1303(c)(1) from using income averaging to compute his 1969 tax liability. See Rev. Rul. 75-40, 1975-1 C.B. 276.

We agree with respondent. Our holding is based on the legislative history underlying the income averaging provisions, the nature of the NDEA grant, and the application of those funds in this case.

Sections 1301 through 1305 set forth income averaging provisions which provide relief to an eligible individual whose taxable income for the year in which averaging is elected (referred to as the computation year) exceeds his average taxable income in the 4 preceding years (referred to as base period years) for tax computation purposes. The formula does not require recomputation of prior years' taxes; rather, it allows a taxpayer to be taxed in the computation year at lower graduated rates on the increase. Because section 1301, et seq., is a relief statute, it is to be given "close scrutiny" and is not subject to a liberal interpretation. It is the taxpayer's burden to prove that he fits squarely within the meaning of the statute. *William L. Frost*, 61 T.C. 488 (1974). See *Breen v. Commissioner*, 328 F.2d 58, 62 (8th Cir. 1964), affg. a

---

[2] A different result would follow if the fellowship funds had been paid to petitioner as compensation for services. Because compensatory proceeds represent amounts earned by petitioner, his expenditure of such amounts on support items would constitute support which he provided for himself.

Memorandum Opinion of this Court, cert. denied 379 U.S. 823 (1964).

A taxpayer cannot avail himself of these provisions merely by meeting the taxable income requirements of the base period years and computation year. Section 1303(c)(1) states that an individual is not eligible "for the computation year if, for any base period year, such individual (and his spouse) furnished less than one-half of his own support." This support rule provides an objective standard to assure that income averaging is not available where there has been no real bunching of income. It achieves this statutory scheme by attempting to limit averaging to persons who have been part of the work force during all relevant years, since these are the persons who are most affected by the graduated income tax rates. As stated by Congress:

A general averaging provision is needed to accord those whose incomes which fluctuate widely from year to year the same treatment accorded those with relatively stable incomes. Because the individual income tax rates are progressive, over a period of years those whose incomes vary widely from year to year pay substantially more in income taxes than others with a comparable amount of total income but spread evenly over the years involved. This occurs because the progressive rates take a much larger proportion of the income in taxes from those whose incomes in some years are relatively high. The absence of any general averaging device has worked particular hardships on professions or types of work where incomes tend to fluctuate. This is true, for example, in the case of authors, professional artists, actors, and athletes as well as farmers, fishermen, attorneys, architects, and others. [H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 234; S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 644.]

Committees of both the Senate and the House of Representatives stressed that, to be eligible for income averaging, a major concern is that the individual's income must have been subject to Federal income tax throughout the 4 base period years as well as the computation year. House Ways and Means Committee, H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125; Senate Finance Committee, S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505.

Congress recognized the harshness of an objective standard which has the effect of limiting the averaging treatment to the labor force, and it approximated this result in some cases:

The general rule provides that the individual and his spouse must have furnished one-half or more of his own support in each of the base period years. However, it was not intended to exclude from the benefits of the averaging provision an individual who, although in the labor force, was unemployed in part or all of the base period years. * * * [H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 238; S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 648.]

Congress then proceeded to carve out three exceptions, now codified in section 1303(c)(2), which mitigate the stringent effects of an objective standard in certain well-defined instances. The exceptions provide that a taxpayer may still qualify as an eligible individual if he is over 25 and was not a full-time student for any 4 years since he was 21; if a substantial part of his income in the computation year is attributable to a major accomplishment substantially worked on in at least 2 base period years; or he files a joint return in the computation year and his income is not substantial with respect to the total income on that joint return.

We note the declared intent of Congress to limit the income averaging benefits only to those individuals who, because of the nature of their business, trade, or profession have incomes which fluctuate widely from year to year. This income must have been subject to tax throughout the base period as well as the computation year. Contrary to this declared intent we find petitioner, as a full-time student, received substantially all of his income in 3 of the base years in the form of tax-exempt fellowships under section 117.

We also note that Congress set forth specifically only three exceptions to this restriction. Petitioner in this case was a full-time student for all but one of the taxable years beginning after he attained age 21 and ending with the 1969 computation year, performed work in the computation year which was applicable to taxable income for that year, and filed a separate return for 1969—all characteristics which preclude him from the stated exceptions in section 1303(c)(2)(A), (B), and (C), respectively. As a result petitioner lies outside the three specific exceptions to the income averaging

prerequisites that the individual's income must have been subject to tax in the relevant years.

Thus, in view of this legislative history, the specific exemptions in the Code, and the determinations of fact in this case, we hold that petitioner is not within the intended scope of an individual for whom the legislative grant of relief was intended.

Notwithstanding this underlying theory, however, the support test is not synonymous with an "entering-the-labor-force" test. In fact, there is no all-encompassing definition of the word "support" in the Code. The regulations consider various items as support, including food, shelter, clothing, medical and dental care, and education, sec. 1.152–2(i), Income Tax Regs., but this list is not inclusive and the inference should not be drawn that support is so limited.

Moreover, support does not bear upon earned or taxable income; it pertains only to the amount of expenses incurred. Sec. 1.152–2(i), Income Tax Regs. This means that a taxpayer who, for example, had income from tax-exempt municipal bonds or lived from withdrawn savings is not precluded from income averaging, as long as he provided one-half of his support during the base period.

To determine if an individual has furnished more than half of his support during a base year, "the rules of section 152 and the regulations thereunder shall be applied." Sec. 1.1303–1(c), Income Tax Regs. Under section 1.152–1(a)(2)(i) of the regulations, in determining whether a person claiming a dependency exemption is entitled to it, the amount of support contributed must be more than half of the entire amount of support which that individual received from all sources. This determination "includes support which the recipient himself supplied," sec. 1.152–2(i), Income Tax Regs., irrespective of the fact that part of the recipient's total income might be properly excludable from gross income, e.g., social security benefits. Sec. 1.152–1(c)(2)(ii), Income Tax Regs.

Because the regulations specifically recognize that a taxpayer can furnish his own support out of excludable income, petitioner equates his NDEA fellowships to a general category of excludable income by an individual which is attributable to support furnished by him—for example, veteran's educational benefits, interest on State and municipal bonds, unemploy-

ment compensation, and social security. He reasons that his fellowship funds, as the exempt benefits mentioned above, are also not Government support payments or welfare benefits, and are not funds based on need or required to be spent on support.

We find this argument unpersuasive on three grounds. First, section 152 regulations are concerned with whether an individual received more than half his support from another person for purposes of a dependency deduction. The person claiming a dependency deduction must compare his contribution to the entire amount of support provided to the recipient from all sources. Section 152(d) provides an exception to this general rule and omits the value of a scholarship from total support if the recipient is a student (within sec. 151(e)(4)). As a corollary the Internal Revenue Service treats NDEA fellowships in the same manner as scholarships to permit dependency deductions to those who would be qualified but for these stipends. Rev. Rul. 61–53, 1961–1 C.B. 21.[3] These exceptions, however, are for the specific purpose of deciding a dependency entitlement and do not determine whether the value of such scholarships or fellowships are considered support furnished by grantors or should be considered as support provided to petitioner by himself.[4]

Secondly, the NDEA fellowship grants themselves do not sustain petitioner's position that these funds are unrestricted and are not provided for support. The National Education Act of 1958 provides for fellowships "to be used for study in graduate programs at institutes of higher education."[5] The recipient must devote full time to and maintain satisfactory progress in the field for which the grant was awarded. He may not accept gainful employment other than occasional part-time employment by his institution to teach or do research.[6]

---

[3] Rev. Rul. 61–53 extends this policy for a dependency deduction to parents who are recipients of NDEA stipends. The ruling permits a parent to consider those portions of the grant that he used for support of his spouse and/or children as his contribution to their support. Petitioner argues that this result is a conclusive inference that amounts spent by a recipient on his own support constitute the recipient's contribution to his support. We reject that conclusion as beyond the scope of this ruling.

[4] See *James B. Heidel*, 56 T.C. 95 (1971).

[5] 20 U.S.C. sec. 462 (1958).

[6] 20 U.S.C. sec. 465 (1958).

Practically speaking, therefore, these fellowship funds and accompanying restrictions afford the recipient the opportunity of concentrated study in a chosen academic field by alleviating some of the accompanying economic stress inherent in producing funds for scholarly pursuits. Thus, in our judgment, the purpose of these fellowship grants is to provide financial encouragement for those who fall within the educational requirements of the Act.

Thirdly, petitioner attempts to transmute funds given by a grantor into support he provided by and for himself. We find the initial characterization of the funds—a grant—to be controlling. Inasmuch as the grants (and in 1967, the teaching assistantship) constitute petitioner's total support during the 1965, 1966, and 1967 base years, there is no question that petitioner spent those NDEA stipends in a manner consistent with the intention of the grants. Consequently, the NDEA fellowships were not support provided to petitioner by himself.

On brief petitioner lists a series of examples to demonstrate a two-step process in determining support. After designating support as either direct (food, clothing, shelter) or indirect (money), he further subdivides indirect support into two nontaxable categories. The first indirect category requires that the payment be expressly used by an individual as support for another person, usually in parent-child situations, such as welfare payments. The second indirect category includes payments for which no requirement is made to account for amounts spent, such as unemployment compensation.

Petitioner points out that under the first indirect category, funds given by a grantor and received by an individual for the benefit of a third person constitute support by the grantor. Thus, benefits received by a mother from the State as Aid to Families with Dependent Children (AFDC) and medical assistance were held to constitute support furnished by the State and not the mother. *Helen M. Lutter,* 61 T.C. 685 (1974), affd. per curiam 514 F.2d 1095 (7th Cir. 1975).

Petitioner argues that under the second indirect category, however, an amount given to an individual without any requirement that the amount be spent on support (for any third person) is considered support furnished by the individu-

al recipient. Thus, social security payments received as old age and disability insurance benefits and used by the recipient for support constitute support furnished by the recipient.[7] Using the above logic petitioner concludes that his fellowships were unrestricted, indirect support payment of the second category attributable to support furnished by himself.

We find petitioner's dichotomization of support to be specious. Petitioner confuses the support issue by avoiding the question of who is the intended beneficiary of the grant. In the AFDC situation, for example, the children are the intended beneficiaries of the State's payments, even though the payments are given to the parent. Here the two-step analysis is permissible: State to parent, parent to child. In the NDEA situation, however, the scholar is the intended beneficiary of the grant. Here a two-step approach is not logically appropriate. Petitioner argues that he supports himself, in effect, by transferring the money received from the NDEA fellowship grant in his left pocket to his right pocket. Such a transmutation would vitiate the support rule under section 152.

Were we to accept such a contention, we would make nugatory the support rule limitations; i.e., anyone could become eligible for income averaging merely by claiming he "supported" himself by using "unrestricted" gifts from family, friends, or institutions.

A major case involving the support test for income averaging is *James B. Heidel,* 56 T.C. 95 (1971). Heidel was awarded an athletic grant-in-aid scholarship by the University of Mississippi to play college football. Benefits under the grant-in-aid included his room, board, textbooks, tuition fees, and laundry and medical expenses. Later Heidel used that year as a base year for an income averaging computation. One issue the Court had to determine was whether, for purposes of 1303(c)(1), the value of this grant-in-aid was support furnished by petitioners or by the grantor. Heidel argued that, although the scholarship was excludable from income under section 117, it was a special kind of scholarship in which he earned the funds because he was required to play football to continue to receive it.

---

[7] See *Thomas J. Black,* T.C. Memo. 1972–135.

The Court stated that Heidel "cannot have it both ways"; that is, he "was on the horns of a dilemma" because he could not exclude a grant-in-aid from gross income as a bona fide scholarship in one year and then, in a later year, claim he earned it in return for his services in order to include it in support furnished by Heidel for himself. In deciding that the funds were not attributable to work performed by Heidel, the Court held that the value of the scholarship did not constitute support furnished by Heidel for himself within the meaning of section 1303(c)(1).

While there are differences between the *Heidel* case and the case at bar, the final resolution includes principles applicable to both cases. Initially the Court in *Heidel* had to deal with Heidel's attempt to straddle inconsistent theories for the same funds in an effort to employ income averaging.[8] Having resolved the inconsistency by determining that Heidel did not earn the funds given to him by the college, the Court focused on whether a nontaxable educational grant could be considered support the recipient furnished himself. The Court did not suggest that nontaxable income could not be used to furnish support by a recipient to himself. Rather, it concentrated on the particular category of grants properly excludable from gross income and concluded (56 T.C. at 104):

if the value of the grant-in-aid is to qualify as a scholarship and excludable from income, it must be considered as having been furnished by the university as a "no-strings education grant" and could not be considered support furnished by petitioner for himself.

Petitioner cannot have it both ways. We believe that * * * it is more consistent with the ordinary understanding of athletic scholarships and the spirit and intent of Congress in requiring generally that an individual provide at least 50 percent of his support in the base period years to qualify for income averaging to conclude that the value of the grant-in-aid afforded to petitioner in 1961 cannot be included in the amount of support furnished by petitioner for himself within the meaning of section 1303(c)(1) of the Code.

We reach the same conclusion in this case since petitioner and respondent both agree that the fellowships and teaching assistantship were properly excludable from income under section 117 as an educational grant. We reject the contention

---

[8] Heidel also made an unsuccessful attempt to come within the major accomplishment rule exception to the support test.

that even though the incidents of the fellowship were such that they were excludable from gross income, these funds nevertheless constituted support which petitioner furnished for himself. We find that these tax-exempt funds were support furnished to him by the grantor, W.S.U.

Petitioner seeks to distinguish *Heidel* from his case on grounds that Heidel was furnished directly with support items, whereas petitioner was paid money for which no requirements were made to earmark the funds for support items; that Heidel's parents partially supported him while petitioner's did not; and that Heidel had a scholarship as opposed to petitioner's fellowship.

These are distinctions without a difference. In both cases the grants were made for the purpose of providing support, so it is irrelevant that the support was provided in kind or in cash. The fact that Heidel's parents provided him with support or claimed him as a dependency exemption in the base period is immaterial since this circumstance goes to the mathematics of the support rule and, therefore, has little bearing on the issue for decision—whether an individual employing income averaging can attribute tax-exempt education funds given to him as support furnished by himself.

Furthermore, scholarships and fellowships are treated in a like manner for purposes of section 117 exemptions from gross income and for purposes of a dependency exemption. A scholarship is defined as an "amount paid or allowed * * * to a student * * * to aid such an individual in pursuing his studies"; and a fellowship is "an amount paid or allowed * * * to an individual to aid him in the pursuit of study or research." Sec. 1.117–3, Income Tax Regs. The slight difference in terminology does not mean that only a scholarship, because its language is a shade more precise, may constitute a support payment. Rather, the definition of a fellowship broadens the scope of tax exemption under section 117 for individuals covered by grants who are not students but have a legitimate educational pursuit.

We conclude that the amounts received by petitioner from NDEA fellowships and a teaching assistantship, which were excludable from gross income, do not constitute support which he furnished himself. Since these funds were expended for and constitute petitioner's total support during 1965, 1966,

and 1967, he did not provide over half his support in those base years. Consequently, petitioner is not an eligible individual within the meaning of section 1303(c)(1) and is not entitled to the benefits of income averaging.

*Decision will be entered for the respondent.*