BRETT GRAHAM BALDWIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14363–82.    Filed May 15, 1985.

*Kathryn J. Sedo* and Daniel W. McDonald, for the petitioner.
*Genelle F. Forsberg* and *Gerald W. Leland*, for the respondent.

SWIFT, *Judge*: In a statutory notice dated April 6, 1982, respondent determined a deficiency in petitioner's 1979 tax liability, and additions to tax, as follows:

| | Additions to tax | | |
| Deficiency | Sec. 6651(a) | Sec. 6653(a) | Sec. 6654(a) |
|---|---|---|---|
| $3,363 | $840.75 | $168.15 | $140.97 |

Following concessions, the primary issue remaining for decision is whether petitioner provided at least one-half of his support during the years 1975 through 1978, thereby allowing him to properly compute his Federal income tax liability pursuant to the income averaging provisions set forth in sections 1301 through 1305.[1] The resolution of this issue turns upon whether petitioner may properly treat amounts received as survivor's benefits from the Social Security Administration and the Veterans' Administration due to the death of his father as financial support that petitioner provided to himself. Respondent contends that these amounts cannot properly be treated as amounts contributed by petitioner, but are amounts received from independent sources.

Petitioner also argues that certain aspects of the income averaging provisions are unconstitutional. Also at issue herein are the additions to tax determined by respondent under sections 6651(a) (failure to file), 6653(a) (negligence), and 6654(a) (underpayment of estimated tax liability).

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The pertinent facts are summarized below.

The petitioner, Brett Graham Baldwin, was a resident of Scottsdale, Arizona, at the time the petition herein was filed.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

Petitioner claims to have timely filed a so-called "fifth amendment return" for 1979, although respondent has no record of such a filing. Petitioner stated that he filed such a return upon the recommendation of a local "tax protester" group in Arizona, that he did so without checking the relevant legal authorities, and that he now regrets not having done more research into the truth of the group's claims before filing such a "return."

A letter dated January 28, 1982, was sent by respondent, advising petitioner that he may be subject to civil and criminal additions and penalties for failing to file a 1979 return. Following the issue of the statutory notice herein and of an additional letter from respondent dated April 18, 1983, petitioner filed a completed 1979 Federal income tax return on or about April 12, 1983.

From 1975 to the summer of 1978, petitioner was a full-time student at Arizona State University in Tempe, Arizona. Petitioner graduated from Arizona State in December 1978, with a bachelor of science degree in electrical engineering. At that time he was 21 years of age. Petitioner started working at a full-time job sometime in 1978, apparently prior to graduation.

Petitioner had no taxable income in 1975 and therefore did not file a Federal income tax return that year. He did file timely individual Federal income tax returns for the years 1976, 1977, and 1978. The returns filed with respect to the years 1976 and 1977 reported zero tax liability. The 1978 return reflected a Federal income tax liability of $66.

During the years 1975 through 1978, petitioner's sole sources of support were academic scholarships from Arizona State University, Basic Educational Opportunity Grants (hereinafter referred to as BEOG), Supplemental Educational Opportunity Grants (hereinafter referred to as SEOG), National Defense Student Loans (hereinafter referred to as NDSL), Social Security survivor's benefits, Veterans' Administration survivor benefits, and wages received from Arizona State University's work-study program. In the latter part of 1978, petitioner also received wages from his full-time employment.

All funds received by petitioner were nontaxable receipts to him except the wages received from the work-study program and from his full-time job which started in 1978. The BEOG and

SEOG funds were nontaxable educational grants similar to a scholarship. The NDSL funds were loans that petitioner was required to repay. The total amounts received by petitioner from each of the above sources is set forth below:

| Source | 1975 | 1976 | 1977 | 1978 |
|--------|------|------|------|------|
| Social Security Administration | $1,477 | $1,818 | $2,098 | $1,848 |
| Veterans' Administration | 144 | 324 | 348 | 256 |
| Scholarships (ASU) | 200 | 425 | 450 | 225 |
| BEOG | 612 | 975 | 807 | 313 |
| SEOG | 0 | 400 | 1,200 | 300 |
| NDSL | 0 | 100 | 322 | 822 |
| Wages—Work-study | 0 | 550 | 210 | 240 |
| Wages—Full-time job | 0 | 0 | 0 | 4,323 |
| Total "support" | $2,433 | $4,592 | $5,435 | $8,327 |

On his 1979 Federal income tax return, petitioner reported that he had wage income in the amount of $18,431.92, interest income of $86, moving expenses of $893, and employee business expenses of $854. The deductions have not been questioned by respondent and are not in issue. Petitioner was single and had no dependents throughout the years 1975 through 1979.

The parties have stipulated that: (1) The amounts set forth above constitute petitioner's total amounts of "support" during the years 1975–79, and that they were actually expended for that purpose; (2) petitioner provided over one-half of his own support for 1978 from his wage income; (3) the amounts received as academic scholarships and educational grants constitute amounts of support that petitioner did not provide for himself; and (4) that amounts received as wages and loans constitute amounts that petitioner did provide for his own support.

## OPINION

The major dispute in this case concerns whether amounts received by petitioner from the Social Security Administration and from the Veterans' Administration as survivor's benefits constitute support provided by petitioner to himself. If, as petitioner argues, such payments qualify as support provided by himself, he may compute his income tax liability for 1979 pursuant to the income averaging provisions in sections 1301

through 1305. If either the amounts received from the Social Security Administration or the Veterans' Administration constitute amounts of support not contributed by petitioner, he will be ineligible for income averaging with respect to 1979.

Section 1303(c)(1) provides that an individual shall not be eligible for income averaging if, for any base year,[2] such individual (and his spouse, if applicable) furnished less than one-half of his support.[3] There are three exceptions to this rule provided in section 1303(c)(2), none of which applies to petitioner herein.[4]

The social security payments in issue herein were authorized pursuant to the provisions of 42 U.S.C. sec. 402(d) et seq. (1983). Such payments were made to petitioner because of his status as a child of an individual (namely, his father) who died a "fully insured" individual under the social security system, and the fact that petitioner was a full-time student under the age of 22 during the years 1975 through 1979. The payments were calculated as a certain percentage of the insured individual's "primary insurance amount." See 42 U.S.C. sec. 402(d)(2) (1983).

The legislative history of the 1965 amendments to the Social Security Act, which amendments provided inter alia for payments to children of fully insured individuals to continue to age 22 where the child is a full-time student, indicates that the intent of Congress was to provide a substitute for the support lost upon the death of the parent. This additional financial assistance was considered important in light of the increasing need for a college degree in order to compete effectively in the job market. The Senate report explains—

Under present law a child beneficiary is considered dependent, and is paid benefits, until he reaches age 18, or after that age if he was disabled before age 18 and is still disabled. The committee believes that a child over age 18 who is attending school full-time is dependent just as a child under 18 or a disabled older child is dependent, and that it is not realistic to stop such a

---

[2]Base years refer to the 4 years immediately preceding the year in which income averaging is elected.

[3]Sec. 1303(c) provides:

(1) IN GENERAL.—For purposes of this part, an individual shall not be an eligible individual for the computation year if, for any base period year, such individual (and his spouse) furnished less than one-half of his support.

[4]Petitioner does argue, however, that the exception provided in sec. 1303(c)(2)(A) is unconstitutional. We will address that argument later in our opinion.

child's benefit at age 18. A child who cannot look to a father for support (because the father has died, is disabled, or is retired) is at a disadvantage in completing his education as compared with the child who can look to his father for support. Not only may the child be prevented from going to college by loss of parental support and loss of his benefits; he may even be prevented from finishing high school or going to a vocational school. With many employers requiring more than a high school education as a condition for employment, education beyond the high school level has become almost a necessity in preparing for work.

The committee believes it is now appropriate and desirable to provide social security benefits for children between the ages of 18 and 22 who are full-time students and who have suffered a loss of parental support. * * * The median age of students graduating from high school is about 18; providing benefits up to age 22 would mean that for many children benefits could continue for the time it takes to complete a 4-year college course.

[S. Rept. 404, to accompany H.R. 6675 (Pub. L. 89–97), 89th Cong., 1st Sess. 96–97 (1965).]

Neither the Internal Revenue Code provisions that pertain to income averaging nor the regulations thereunder provide any specific guidance with respect to whether social security benefits are to be considered as support provided by the grantor (the Federal Government) or as support provided by the recipient (such as petitioner herein). The parties agree, and our research confirms, that there is no case directly on point.

Petitioner argues that, because the term "support" is not defined in section 1303, nor in the regulations thereunder, the Court should look to section 152 (which pertains to dependency exemptions) because that section does expressly define "support." Petitioner notes that even though the regulations accompanying the income averaging provisions no longer expressly reference the regulations accompanying section 152 as to the meaning of "support" (T.D. 7196, 1972–2 C.B. 499), the similarity of the statutory language in sections 1303 and 152 justify our reliance on decisions involving section 152.

Petitioner argues that the regulations under section 152 expressly define support, and points in particular to sec. 1.152–1(a)(2)(ii), Income Tax Regs., which provides in relevant part:

In computing the amount which is contributed for the support of an individual, there must be included an amount which is contributed by such individual *for his own support*, including income which is ordinarily

excludable from gross income, *such as benefits received from the Social Security Act.* [Emphasis added by petitioner.]

Petitioner also relies on a number of Memorandum Opinions of this Court that address dependency exemptions under section 152. *Brooks v. Commissioner*, T.C. Memo. 1957–76 is cited for the proposition that social security death benefits paid to a child constitute support provided by the child. *Sumner v. Commissioner*, a Memorandum Opinion of this Court dated February 15, 1954, is cited for the proposition that Veterans' Administration death benefits constitute support provided by the recipient. In addition, Rev. Rul. 74–543, 1974–2 C.B. 39, and Rev. Rul. 57–344, 1957–2 C.B. 112, are cited as support for petitioner's position.

Having reviewed the authorities cited by petitioner, we do not believe that they are persuasive. Those cases (and the other authorities cited by petitioner) concern a parent or other taxpayer who claims a dependency exemption on the basis that he provides more than one-half of the would-be dependent's support. In making that determination under section 152, the total amount of support provided by the individual claiming the support exemption during the year is compared with the total amount of support provided by all other sources (including support which the individual "dependent" provided to himself) in order to determine if the taxpayer provided more than one-half of all the support. See sec. 1.152–1(a)(2)(i), Income Tax Regs. Those cases did not decide, nor did they even need to address, *who* (other than the taxpayer) provided a particular kind of support as between the third-party grantors (such as the Social Security Administration) and the grantee (namely, the claimed dependent person). Such an issue simply would not be relevant under section 152, once it was determined that the support in question was provided by a source other than the taxpayer claiming the dependency exemption.

Contrary to petitioner's argument, sec. 1.152–1(a)(2)(ii), Income Tax Regs., has not been interpreted, even within the context of the dependency exemption, to require that all benefits paid under the Social Security Act are to be considered as support provided by the recipient. In *Lutter v. Commissioner*, 61 T.C. 685 (1974), affd. per curiam 514 F. 2d 1095 (7th Cir. 1975), payments were made to a parent under the Federal-State Aid to Families With Dependent Children

(AFDC) program. We rejected the taxpayer's argument therein that because the legislative intent of Congress was to give the money to the parents of dependent children to spend as the parents saw fit, the payments should be considered as support provided by the parents to the children. In so ruling, we pointed out that the payments were "earmarked for the children" (61 T.C. at 689) and that the parents were accountable to the State to ensure that the payments were used in the best interests of the child. We held that "the AFDC benefits were received by petitioner for the benefit of her minor children and constitute 'support' by the State of Illinois, not 'support' furnished by petitioner." 61 T.C. at 690.

With regard to the intended scope of the income averaging provision, committees of both the Senate and the House of Representatives emphasized two major concerns, as follows:

To be eligible for averaging, one of the principal concerns is that the individual's income must have been subject to tax by the United States throughout the entire base period as well as the computation year. * * *

A second concern of this provision is that the individual be a member of the labor force in both the computation year and the 4 base period years. It has been necessary, however, to approximate this result in some cases. The general rule provides that the individual and his spouse must have furnished one-half or more of his own support in each of the base period years. However, it was not intended to exclude from the benefits of the averaging provision an individual who, although in the labor force, was unemployed in part or all of the base years. For that reason, individuals generally are eligible for averaging if they are 25 years old and there have been at least 4 years since the individual attained age 21 when he was not a full-time student. Thus, generally, individuals age 25 or over will be eligible for averaging so long as they have been out of school for at least 4 years since age 21.

[H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 238; S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 648.]

*Heidel v. Commissioner*, 56 T.C. 95 (1971), concerned whether a grant-in-aid athletic scholarship constituted support furnished by the recipient within the meaning of section 1303(c)(1). We noted therein that section 1303 is a relief section that should be given "close scrutiny" and that it is not entitled to a liberal interpretation. (56 T.C. at 103, citing *Hendricks v. Commissioner*, 406 F.2d 269 (1969), affg. per curiam a Memorandum Opinion of this Court.) After reviewing the above committee reports, we concluded that the taxpayer therein:

hardly qualified, "within the letter and spirit of the Congressional grant," as indicated by the committee reports, as an individual to whom relief was sought to be granted by the income-averaging provisions. Throughout the base period years he was a full-time student, was not a regular member of the labor force, and the value of the scholarship which he claims as support furnished to himself was not subject to U.S. taxes. [56 T.C. at 103.]

See also *Jolitz v. Commissioner*, 73 T.C. 732 (1980).

Similar observations could be made regarding petitioner in the present case, who also was a full-time student throughout the 4 base-period years and was not a "regular" member of the labor force. He also was not taxed on the benefits at issue herein, and did not pay any Federal income taxes for 3 of the 4 base period years.

In *Sharvy v. Commissioner*, 67 T.C. 630 (1977), affd. per curiam 566 F.2d 1118 (9th Cir. 1977), the Court considered whether amounts received from a National Defense Education Act (NDEA) fellowship and a teaching assistantship qualified as support which the recipient provided to himself within the meaning of section 1303(c)(1). The taxpayer argued that when a "no-string"[5] tax-exempt fellowship (or other similar "support") is provided by a grantor to an individual, those funds become the property of the grantee, who is thereafter free to do with them as he wishes, and that when these funds subsequently are expended for the recipient's support, they constitute support furnished by the recipient for purposes of income averaging.

We rejected that argument and stated that—

Were we to accept such a contention, we would make nugatory the support rule limitations; i.e., anyone could become eligible for income averaging merely by claiming he "supported" himself by using "unrestricted" gifts from family, friends, or institutions. [67 T.C. at 640.]

Having reviewed the legislative history, the cases and other relevant authority, we conclude that petitioner is not an "eligible individual" for purposes of income averaging. The facts of this case (namely, that petitioner was a full-time student throughout the 4 base-period years, was not a full-time member of the labor force, and the fact that the funds that he seeks to characterize as "support" were not subject to Federal

---

[5]An example of support with "strings," under *Sharvy*, would be the AFDC program, where the recipient-parent is under an obligation to expend the funds for the benefit of the child.

income taxation) are virtually indistinguishable from those in *Heidel v. Commissioner, supra.*

As in *Sharvy*, petitioner herein performed no services to earn the funds received. The payments herein were received by petitioner solely because of the death of his father, who was a "fully insured" person (under the social security system) at the time of his death, while petitioner was a full-time student under the age of 22. The benefits received were calculated by reference to his father's earnings and were, in effect, statutory substitutes for the support his father presumably would have provided had he lived. Clearly, had petitioner's father lived and made the payments in issue herein, such payments would constitute amounts contributed by the father, not by petitioner.

We hold that the payments petitioner received from the Social Security Administration were "support" provided by an independent source (namely, the Federal Government), and not by petitioner. We therefore need not reach the issue of whether the Veterans' Administration payments qualify as support furnished by petitioner.

Next, we consider petitioner's argument that, even if he is found to have provided less than 50 percent of his own support, he is entitled to income average because the exception to section 1303 contained in section 1303(c)(2)(A) is unconstitutional as written, and therefore should be enlarged to include petitioner's situation. That section provides that an individual will be eligible for income averaging, among other things, if the individual attained age 25 prior to the close of the computation year, and was not a full-time student during the 4 taxable years commencing upon attaining the age of 21 and ending with the computation year.[6] Petitioner argues that this exception creates an arbitrary classification without a rational basis because it unconstitutionally favors unemployed persons over college students. Petitioner also argues that, under the statute, a taxpayer could do anything other than attend school between the ages of 21 and 25, attend college for the next 4

---

[6]Sec. 1303(c)(2)(A) provides:

(2) EXCEPTIONS.—Paragraph (1) shall not apply to any computation year if—

(A) such year ends after the individual attained age 25 and, during at least 4 of his taxable years beginning after he attained age 21 and ending with his computation year, he was not a full-time student.

years, graduate at age 29, and immediately begin to income average upon obtaining employment. Petitioner argues that his situation is virtually identical to the foregoing scenario, but that petitioner is denied the benefits of the statute solely because of his age. The only case cited by petitioner in support of his argument that the exception is unconstitutional is *Kahn v. Shevin*, 416 U.S. 351 (1974), which petitioner cites for the proposition that the Fifth Amendment due process clause and the 14th Amendment equal protection clause are applicable to tax laws. While we agree with petitioner that constitutional protections apply to tax laws, we disagree with petitioner's assertions that the provisions in section 1303(c)(2)(A) create an arbitrary classification and/or constitute unconstitutional age discrimination.

Generally, statutory classifications are valid provided they bear a rational relation to a legitimate governmental purpose. *Regan v. Taxation With Representation of Washington*, 457 U.S. 1129 (1982). Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right, such as freedom of speech, or employ a suspect classification, such as race. See, e.g., *Harris v. McRae*, 448 U.S. 297, 322 (1980). Legislatures have particularly broad latitude in creating classifications and distinctions in tax statutes. 457 U.S. at 1132.

It is apparent from the legislative history that the general purpose of the income averaging provisions was to provide relief from the effects of the progressive tax rate system to members of the work-force whose incomes fluctuate significantly from year to year. See H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 234; S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 644. The classification to which petitioner objects represents an effort on the part of Congress to attain the legitimate governmental purpose of limiting the availability of income averaging to those individuals who comprise the work force. The exception that draws petitioner's attack (namely, section 1303(c)(2)(A)) represents an effort by Congress to provide income averaging relief to those persons who, in fact, have been unemployed. Thus, the purpose of the statutory classification is to provide a practical test to differentiate between those who comprise the labor

force and those who do not, not an attempt to discriminate against college students or young people.

There are a number of sections in the Internal Revenue Code that provide for differing tax treatment depending upon the taxpayer's age. For example, an additional $1,000 exemption is provided to a taxpayer who attains the age of 65 before the end of his taxable year. Sec. 151(c). Also, if a taxpayer has attained the age of 55 before the date of sale of his principal residence, and if during the 5-year period ending on the date of such sale the property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more, the taxpayer may exclude up to $100,000 of such gain from gross income. Sec. 121(a) and (b).[7] See also *United States v. Maryland Savings-Share Insurance Corp.*, 400 U.S. 4 (1970). We therefore reject petitioner's constitutional challenge to section 1303(c)(2)(A).

We next consider the applicability of the additions to tax pursuant to section 6651(a), for failure to file a timely 1979 Federal income tax return, and section 6653(a), for negligence or intentional disregard of rules and regulations. Petitioner claims to have timely filed a so-called "Fifth Amendment" return. Respondent has no record of receiving such a "return." Although the document is not admitted into evidence, it is obvious from the copy of the document that petitioner alleges to have filed (which petitioner attached to his opening brief) that, even if it had been filed, it would not constitute a valid Federal income tax return because it contained no information relating to the taxpayer's income and deductions. *Hatfield v. Commissioner*, 68 T.C. 895, 898 (1977). See also *Beard v. Commissioner*, 82 T.C. 766 (1984).

Petitioner bears the burden of proving that his failure to file a timely return was due to reasonable cause and not willful neglect. *Neubecker v. Commissioner*, 65 T.C. 577, 586 (1975). Petitioner testified that he was following the recommendations of a local "tax protester" group in filing a "Fifth Amendment return," that he did so without verifying the accuracy of their statements by checking any relevant legal authorities, and that he now regrets his actions. Petitioner had previously filed Federal income tax returns with respect to the

---

[7]See *Woolf v. Commissioner*, T.C. Memo. 1981–286, for a discussion of the constitutionality of sec. 121.

years 1976, 1977, and 1978, and was well aware of the legal requirements to do so. Under the circumstances, we find that petitioner is liable for the section 6651(a) addition to tax. Because petitioner has failed to prove that his failure to timely file his 1979 Federal income tax return was not due to either negligence or intentional disregard of rules and regulations, we also find that he is liable for the section 6653(a) addition to tax. *Foster v. Commissioner*, 80 T.C. 34, 237 (1983); *Bixby v. Commissioner*, 58 T.C. 757, 791–792 (1972).

The final issue is the applicability of the addition to tax under section 6654 for underpayment of estimated tax by an individual. Petitioner also bears the burden of proof on this issue (*Hollman v. Commissioner*, 38 T.C. 251, 263 (1962)). Petitioner evidently did not have any Federal income taxes withheld from the wages he earned at Schlumberger Technology Corp., nor did he make any estimated tax payments with respect to those wages.

The addition to tax under section 6654(a) is mandatory unless petitioner can demonstrate that he comes within one of the computational exceptions of section 6654(d) (*Grosshandler v. Commissioner*, 75 T.C. 1, 20–21 (1980)), which petitioner has failed to do. Extenuating circumstances are irrelevant. *Estate of Ruben v. Commissioner*, 33 T.C. 1071, 1072 (1960). We therefore uphold respondent on this issue.

Respondent, however, acknowledges that in computing the amount of the section 6654 addition to tax for purposes of the statutory notice of deficiency, he did not take into account $857.66 withheld from petitioner's wages at the Salt River Project. Respondent is to take that amount into consideration in making the Rule 155 computations herein.

*Decision will be entered under Rule 155.*