HAROLD O. STOKES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stokes v. Commissioner
Docket Nos. 34613-87;[1]
34614-87; 34615-87; 34616-87
United States Tax Court
T.C. Memo 1989-661; 1989 Tax Ct. Memo LEXIS 661; 58 T.C.M. (CCH) 974; T.C.M. (RIA) 89661; December 20, 1989
Harold O. Stokes, pro se. Emile L. Hebert, III, for the respondent. MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: In these consolidated cases, respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows: >100> >101> Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [2]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$ 9,099
$   454.95
$ 2,195.50
50 percent of
the interest
due on $ 8,782
1982 9,722
1,869.50 486.10
50 percent of
the interest
due on $ 7,478
1983 8,700 826.50 435.00
50 percent of
the interest
due on $ 3,306
1984 9,170 937.75 458.50
50 percent of
the interest
due on $ 3,751
Additions to Tax
Year
Sec. 6654(a)
Sec. 6661(a) [3]
1981
$ 667 --
1982
673
$ 2,430.00 1983
140
2,175.00
1984
151
2,292.50
*666 After concessions by both parties, the issues for decision are: (1) Whether petitioner's farming activities during the taxable years 1981 through 1984 were engaged in with the objective of making a profit; (2) whether petitioner is entitled to investment tax credits attributable to his farming activities for the taxable years, 1981, 1983, and 1984; (3) whether petitioner is liable for additions to tax determined by respondent pursuant to sections 6651(a)(1), 6653(a), and 6654(a) for the taxable years 1981 through 1984; and (4) whether petitioner is entitled to a determination of an overpayment if one exists for taxable year 1983. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided with *667 his spouse, Ruth Stokes, in Amite, Louisiana during the taxable years in issue, and when he filed his petitions in these cases. [4] Petitioner did not timely file Federal income tax returns for the taxable years 1981 through 1984. Respondent determined deficiencies for petitioner's taxable years 1981 through 1984, and in July 1987 mailed deficiency notices for each of the taxable years in issue. In November 1987, petitioner and his spouse filed joint income tax returns (Form 1040) for the taxable years 1981 through 1984 with the Internal Revenue Service Center in Austin, Texas. Both of petitioner's grandfathers were farmers. One of his grandfathers owned and operated a dairy farm and a truck farm. His other grandfather owned and operated a cotton farm. During his minority, petitioner worked on both of his grandfathers' farms. Petitioner performed various tasks, which included milking cows, bailing *668 and hauling hay, fixing fences, picking produce, and picking and scraping cotton. During his junior and senior years in high school, petitioner worked on an experimental farm. While working on the experimental farm, petitioner operated tractors, cut corn, and put up silage. He also planted plots of different varieties of hay, then cut and dried the hay to determine its yield. In late 1980 or early 1981, petitioner purchased two Tennessee Walking horses and two quarter horses. About the same time, petitioner also purchased four calves. Petitioner did not purchase any livestock in 1982, but did sell one of his horses. Also in 1982, petitioner's horses produced a live and a stillborn foal. In 1983, petitioner purchased nine quarter horses, for cash. Petitioner planned to breed the quarter horses. During that same year, petitioner purchased seventeen Santa Gertrudis calves. Petitioner did not sell any livestock in 1983 or 1984. In late 1985, petitioner's son was in a serious accident and was hospitalized for an extended period of time. As a result of his son's accident, petitioner sold all of his cattle. Petitioner also sold all of his quarter horses, but this sale was prompted *669 primarily by the poor economic conditions in the local economy. During the taxable years in issue, petitioner conducted his farming activities at his home which was located on seven acres of land in Amite, and on forty acres of leased pasture land which was located approximately three miles from his home. During the taxable years in issue, petitioner was employed full time as a carpenter by a construction company. Petitioner's wages and the amount of Federal income taxes withheld from his wages were as follows: Year
Wages
Tax Withheld
1981
$ 33,836.60
$   317.87
1982
32,764.60
2,244.44
1983
32,581.96
5,395.00
1984
34,221.81
5,419.92
Petitioner's spouse worked part time during the taxable years in issue. Mrs. Stokes' wages and the amount of Federal income taxes withheld from her wages were as follows: Year
Wages
Tax Withheld
1981
$   323.02
$   1.33
1982
2,021.25
118.58
1983
3,901.50
247.48
1984
3,044.35
198.20
The only tax payments made by petitioner for the taxable years 1981 through 1984 were those amounts that were withheld from his wages and his spouses wages. During taxable year 1983, petitioner *670 received dividend income in the amount of $ 8.00. During taxable year 1984, petitioner received dividend income in the amount of $ 250, and interest income in the amount of $ 326. Petitioner reported the following income and expenses from his farming activities on Schedule F, which was filed with his joint Federal income tax returns for the taxable years 1981 through 1984: Year
Income
Expenses
Profit/(Loss)
1981
$ 429
$  9,634
(9,205)
1982 820
9,930
(9,110)
1983 -- 15,062
(15,062)
1984 -- 11,500
(11,500)
In addition, petitioner claimed investment tax credits related to his farming activities of $ 88 for 1981, $ 895 for 1983, and $ 510 for 1984. Petitioner did not maintain any formal books, records, or a separate checking account for his farming activities, during any of the taxable years in issue. However, petitioner verified part of his farming expenses and income to the satisfaction of respondent, which are as follows: Year
Verified Income
Verified Expenses
1981
$ 429.00
$  6,418.02
1982
820.00
3,576.54
1983
--  4,815.69
1984
151.81
11,353.40
When petitioner was not working as a carpenter, *671 he spent much of his time, including weekends and vacations, working on his farm. Petitioner received three weeks vacation per year. In the evenings after work, petitioner spent two to three hours per day feeding his cattle and horses, and repairing fences. Petitioner's spouse and three children also worked on the farm, but the extent of their involvement is not discernible from the record. Petitioner also hired several people to build a barn and install fencing, and a horse trainer who broke and trained horses. OPINION The first issue for decision is whether petitioner's farming activities during the taxable years in issue were engaged in for profit. Respondent contends that petitioner is not entitled to claim a deduction for farming losses or receive related investment tax credits, because the farming operation was not an activity engaged in for profit. Section 183(a) provides that a taxpayer cannot claim a deduction for an activity which is "not engaged in for profit," except as provided for under section 183(b). An activity not engaged in for profit is any activity in which deductions *672 would not be allowed for the taxable year under section 162, or under paragraphs (1) or (2) of section 212. Sec. 183(c). Section 162 allows a taxpayer to claim a deduction for all the ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212 generally allows a taxpayer to claim a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year "for the production or collection of income," and "for the management, conservation, or maintenance of property held for the production of income." For a deduction to be allowable under either section 162 or 212, the taxpayer must show that the activity in which the expenses were incurred was engaged in with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is unnecessary, a taxpayer's profit objective must be bona fide. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); *673 Dreicer v. Commissioner, supra at 645. This is a factual issue which is to be resolved after considering all the relevant facts and circumstances. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Finoli v. Commissioner, 86 T.C. 697, 722 (1986). Objective facts are given greater weight than a taxpayer's after-the-fact statements of intent. Sec. 1.183-2(a), Income Tax Regs; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Petitioner bears the burden of establishing the requisite profit objective. Beck v. Commissioner, 85 T.C. 557, 569-570 (1985). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors for determining whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying *674 on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Not all of these factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979). We find that petitioner has failed to prove that his farming activities during the taxable years 1981 through 1984 were engaged in for profit. Accordingly, petitioner's farming losses for these years are limited to those allowable under section 183(b). During the taxable years in issue, petitioner did not conduct his farming activities in a businesslike manner. Petitioner did not maintain any formal books, records, or a separate checking account. Petitioner *675 apparently retained some receipts for his farming expenses and verified a portion of his claimed expenses with respondent. However, the fact that he was able to verify less than one-half of his claimed expenses for the taxable years 1981 through 1983 illustrates that petitioner did not conduct his farming activities in a businesslike manner. Petitioner failed to produce any records reflecting the purchase and sale of his horses and cattle. In addition, on cross examination, petitioner was unable to identify the sources of income which he reported on his Schedule F for the taxable years 1981 through 1984. We also find it significant that petitioner did not file Federal income tax returns for the years in issue, until after he had received respondent's deficiency notices. Petitioner did not conduct any type of profitability study prior to engaging in his farming activities, other than observing his neighbors and concluding that they were "making money in horses." When petitioner decided to change his operations from breeding Tennessee Walking horses to quarter horses, that decision was based upon his conclusion that "the market was better for quarterhorses (sic)." Petitioner offered *676 no evidence that he consulted with any farm experts during any of the taxable years in issue. Although petitioner hired a horse trainer, this was only one facet of his farming activities, and the expertise of the horse trainer and advice he provided petitioner has not been developed on the record. Though petitioner has had prior farming experience, as evidenced by his work on his grandfathers' farms and on an experimental farm, this experience does not include the breeding of horses or raising cattle. On brief, petitioner contends that he consulted several horse breeders, trainers, county agents, veterinarians, and numerous cattle farmers. However, with the exception of the horse trainer, these contentions are not supported by the record. During the taxable years in issue, petitioner was employed full time, and as a result he could only devote a limited amount of time to his farming activities. Prior to 1980, petitioner had not engaged in any activity which involved the breeding of horses or cattle. Thus, his relative inexperience in breeding horses and cattle, and his outside employment are indicative of his lack of profit objective. Petitioner's history of losses with respect *677 to his farming activities is also significant. Petitioner reported losses from his farming activities for each of the taxable years 1981 through 1984. Collectively, these losses amounted to over $ 45,000. In addition, petitioner also reported losses from his farming activities for taxable years 1985 through 1987. Petitioner contends that he is not a wealthy man and cannot support a profitless hobby. The financial status of the taxpayer is one factor to be weighed in determining profit objective, but it is not the only factor. Sec. 1.183-2(b)(8), Income Tax Regs. We find this factor to be significantly outweighed by the other factors as discussed above. Petitioner acknowledged that he enjoyed horses, but that he rode them only once per month in order to keep them broke. Petitioner's family also, on occasion, rode his horses. We find the elements of personal pleasure that petitioner may have received from his farming activities to be of little significance in deciding these cases. Petitioner contends that section 183(d) is applicable in these cases. *678 Section 183(d) establishes a presumption that a taxpayer's activities were engaged in for profit, if in any two of five consecutive taxable years ending with the year in question, gross income exceeds deductions attributable to the activity. If a major part of the activity consists of the breeding, training, showing, or racing of horses, the presumption is established if gross income exceeds deductions attributable to the activity for any two of seven consecutive taxable years. Sec. 183(d). This presumption, however, does not apply in these cases. Petitioner reported farming losses for all of the taxable years in issue, and there is no proof that his farming activities have been profitable in any year before the years in issue. The second issue for decision is whether petitioner is entitled to the investment tax credits that he claimed on his income tax returns for the taxable years 1981, 1983, and 1984. Section 38 provides that a credit is allowed to a taxpayer for qualified investment in certain property. The credit is allowable for *679 property with respect to which depreciation is allowable and which has a useful life of three or more years. Sec. 48(a)(1). Depreciation is allowable on property used in a trade or business or held for the production of income. Sec. 167(a). Our determination that petitioner did not engage in his farming operations with the requisite profit objective is dispositive of this issue. Finoli v. Commissioner, 86 T.C. at 744-745; Pike v. Commissioner, 78 T.C. 822, 841-842 (1982), affd. without opinion 732 F.2d 164 (9th Cir. 1984). Accordingly, petitioner is not entitled to the investment tax credits related to his farming activities. The third issue for decision is whether petitioner is liable for the additions to tax. Respondent determined that petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a), and 6654(a). Section 6651(a)(1) imposes an addition to tax upon a taxpayer who fails to file a timely return, unless it is shown that the taxpayer's failure to file is due to reasonable cause and not due to willful neglect. *680 Petitioner did not file his income tax returns for the taxable years 1981 through 1984 on or before the filing deadline. Instead, he filed his returns in November 1987, which was after the deficiency notices had been mailed by respondent. Thus, petitioner is liable for the additions to tax under section 6651(a)(1), unless he can show that his failure to timely file his tax returns for the taxable years 1981 through 1984 was due to "reasonable cause and not to willful neglect." Sec. 6651(a)(1). Whether a failure to file a return was due to reasonable cause is essentially a question of fact and the burden of proof is upon petitioner. Baldwin v. Commissioner, 84 T.C. 859, 870 (1985); Shomaker v. Commissioner, 38 T.C. 192, 202 (1962); Rule 142(a). Petitioner argues that he did not file tax returns for the taxable years 1981 through 1984 because of family illnesses and the hospitalization of his son. Petitioner also contends that he had financial difficulties which rendered him unable to pay his Federal income taxes. Inability to pay Federal income taxes *681 does not constitute reasonable cause for failure to file a timely return. See Fitch v. Commissioner, T.C. Memo. 1975-36. However, illness can constitute reasonable cause if the taxpayer is prevented from filing a timely return because of such illness. See Hayes v. Commissioner, T.C. Memo. 1967-80. Petitioner has asked us to consider that members of his family suffered various illnesses during the years 1981 through 1984. Petitioner has not established, however, that these illnesses would excuse a reasonable and prudent person from filing Federal income tax returns for four consecutive years. Based on the record before us, the illnesses that petitioner contends his family suffered are not different from illnesses that similar families suffer over a four-year period. Though we empathize with petitioner concerning his son's 1985 injuries, the accident occurred in late 1985, which was after the dates on which the tax returns in issue were due. After-the-fact occurrences do not constitute reasonable cause for failure to file a timely return. Accordingly, petitioner *682 has failed to sustain his burden of proof, and the imposition of an addition to tax under section 6651(a)(1) is appropriate. Respondent also determined that petitioner is liable for additions to tax under sections 6653(a)(1) and (2), for the taxable years 1981 through 1984. Section 6653(a)(1) imposes a 5-percent addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) provides for a separate addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules and regulations. Respondent's determination is presumed correct and petitioner bears the burden of proving otherwise. Bixby v. Commissioner, 58 T.C. 757, 791-92 (1972); Rule 142(a). Negligence within the meaning of section 6653(a) has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has *683 failed to prove that his failure to file his tax returns for the taxable years 1981 through 1984 was due to reasonable cause and not to willful neglect. Respondent also determined that petitioner is liable for additions to tax under section 6654(a) for underpayment of estimated tax for the taxable years 1981 through 1984. Petitioner asks us to waive these additions to tax due to his family illnesses. Extenuating circumstances, however, are irrelevant, and section 6654(a) additions cannot be waived, unless a statutory exception applies. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner , 33 T.C. 1071-1072 (1960). For purposes of section 6654(a), taxes withheld from wages are deemed to be a payment of estimated tax for the taxable year. Sec. 6654(e)(2). [5] Because concessions have been made by both parties it is possible that taxes withheld from petitioner's wages might eliminate any underpayment of estimated tax for one *684 or more of the taxable years. This will have to be determined pursuant to the Rule 155 computation. Respondent may assess the additions to tax under section 6654(a) to the extent of any underpayment of estimated tax. The final issue for decision is whether petitioner is entitled to a determination of any overpayment that might exist for taxable year 1983. In determining an overpayment for taxable year 1983, section 6512(b)(3)(B)[6] limits the amount of our determination to amounts paid within the period specified in section 6511(b)(2). The focus of section 6512(b)(3)(B) is on what was or could have been claimed as a refund on the date the notice of deficiency was mailed. A claim for refund need not have actually been filed. Section 6512(b)(3)(B) only requires that a timely claim could have been filed seeking a refund at the time the deficiency notice was mailed. *685 Section 6511(b)(2)(A) limits the amount of refund that can be claimed pursuant to a refund claim filed during the three-year period provided in section 6511(a). Section 6511(a), which generally allows refund claims within three years from the time a return was filed, also provides that in cases where no return is filed, a claim for credit or refund must be filed within two years from the time the tax was paid. Section 6511(b)(2)(B) provides that if a claim was not filed within the three-year period after a return was filed, the amount of refund is limited to the portion of tax paid during the two years preceding the filing of the refund claim. Because no returns had been filed when the deficiency notices were mailed, section 6511(b)(2)(B) limits the amount of any refund or overpayment to the amounts paid within two years prior to the mailing of the notice of deficiency. Cf. White v. Commissioner, 72 T.C. 1126, 1130-1133 (1979). Taxes withheld at the source are deemed to *686 have been paid by a taxpayer on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31. Sec. 6513(b). Thus, the taxes withheld from petitioner's wages during 1983 are deemed to have been paid by him on April 15, 1984. In order to receive a refund or credit for an overpayment of tax for taxable year 1983, petitioner was required under section 6511(a) to file his claim on or before April 15, 1986. In the instant cases, the deficiency notices were mailed on July 21, 1987. At that date petitioner could not have timely filed a claim for refund or credit because the two-year period of limitations had expired. Accordingly, petitioner is not entitled to a decision that he has an overpayment of tax, if any, for the 1983 taxable year. After concessions by both parties, Decisions will be entered under Rule 155. Footnotes
1. On March 3, 1989, this Court granted respondent's motion to consolidate the cases at docket Nos. 34614-87, 34615-87, and 34616-87 with the case at docket No. 34613-87 for trial, briefing, and opinion.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Respondent has conceded that petitioner is not liable for the additions to tax under section 6661(a), for the taxable years 1982 through 1984.↩
4. The petitions in these cases were originally filed by petitioner and his spouse, Ruth Stokes. On February 14, 1989, this Court granted respondent's Motion to Dismiss for Lack of Jurisdiction as to Ruth Stokes, in cases at docket Nos. 34613-87, 34614-87, 34615-87, and 34616-87.↩
5. Section 6654(e)(2) was redesignated as section 6654(g)(1)↩. Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 788-793.
6. The limits specified in section 6512(b)(3)(A) and (C)↩ are inapplicable because no tax was paid after the mailing of the notice of deficiency and no refund claim was filed prior to mailing the notice of deficiency.