GLENN SCOTT HUGHES AND GINGER STOKES HUGHES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hughes v. Commissioner
Docket No. 17453-90
United States Tax Court
T.C. Memo 1992-438; 1992 Tax Ct. Memo LEXIS 458; 64 T.C.M. (CCH) 366; August 3, 1992, Filed *458 Decision will be entered under Rule 155. For Glenn Scott Hughes, pro se. For Respondent: Abbey B. Garber. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for tax year 1983 in the amount of $ 5,198, an addition to tax under section 6551(a)(1) in the amount of $ 205.70, additions to tax under section 6653(a)(1) and (2) in the amounts of $ 277.15 and 50 percent of the interest due on the portion of the deficiency due to negligence, and an addition to tax under section 6661 in the amount of $ 1,300. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner husband resided in Rowlett, Texas, and petitioner wife resided in Garland, Texas, when they filed their petition. The term "petitioner" will be used to refer to petitioner husband. [1]
*459 After concessions by petitioner regarding underreported interest income and retirement income, the questions for our decision are: (1) Whether $ 17,928 which petitioner received from Texas Eagle Investments, Inc., constitutes self-employment income or a gift; (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file a timely return; (3) whether petitioner is liable for additions to tax under section 6553(a)(1) and (2) for negligence or intentional disregard for rules or regulations; and (4) whether petitioner is liable for an addition to tax under section 6661 for substantial understatement of income tax liability. Early in 1983, petitioner left his home in Oregon and his job as a high school guidance counselor and computer teacher to move to Dallas, Texas. He did so on the urging of his brother Ernest Hughes, a real estate developer. Petitioner had virtually no contact with his brother for many years when, late in 1982, he received a Christmas card from him containing a check for approximately $ 10,000. Petitioner later learned that his brother was making a great deal of money and sending large checks to other relatives and friends *460 as well. Petitioner visited his brother briefly in Texas and decided to move there. After moving to Texas in January 1983, petitioner was initially unemployed and supported by his brother, who gave petitioner money to cover the expenses of moving petitioner's wife and five children to Texas. Petitioner and his brother had no clear mutual understanding as to the nature of these payments, and no formal loan documents or other agreements were executed. When petitioner initially moved his family to Texas, they lived in a house owned by his brother, who told him "not to worry" about paying rent. In mid-1983, when his brother began to experience economic difficulties, he asked petitioner to pay the monthly mortgage payment on the house. By September 1983, petitioner was unable to meet the monthly payments and moved out. Earnest Hughes' checks to petitioner were written on the account of Texas Eagle Investments, Inc., a checking account which he used for, among other things, personal and business investments. Ernest Hughes was the sole owner of the assets in the account. Texas Eagle Investments, Inc., did not conduct an active trade or business. In early 1983, petitioner managed *461 a video supply store owned by a friend of his brother, and in March his brother and two of his friends invested money in the founding and incorporation of a computer store, Celestial Connection. Petitioner invested no money in Celestial Connection but ran the store and was paid a salary, until the business failed late in 1983. Meanwhile, Ernest Hughes was involved with a failing condominium project and was later convicted of fraud in connection with that project. After 1983, petitioner received no more checks from his brother and has had little subsequent contact with him. Petitioner has resumed his teaching career. In 1984, Ernest Hughes turned over the records of Texas Eagle Investments, Inc., to an accountant, who issued a Form 1099-MISC to petitioner for the amount of $ 22,000. Respondent determined that of this amount $ 17,928 was documented as having been paid to petitioner. 1. Gift or Self-employment Income
Respondent determined that the entire $ 17,928 represented self-employment income to petitioner. Petitioner contends that it is a gift. Respondent submitted in evidence two checks written to petitioner on the account of Texas Eagle Investments, Inc., in *462 the amounts of $ 10,000 and $ 5,000, as well as petitioner's deposit slips purporting to record those deposits. The $ 5,000 check bears the notation "advance" in the lower left corner. No documentation was presented concerning the mode of payment or the deposit of the remaining $ 2,928. We will treat these three amounts separately, beginning with the $ 10,000 check. Petitioner and his brother both testified concerning the nature and amount of the payments, but neither was specific in his recollections. One point of agreement, however, was that Ernest Hughes intended to make a gift to petitioner of at least $ 10,000. The essential factor determining the existence of a gift is donative intent. Commissioner v. Duberstein, 363 U.S. 278, 285-286 (1960), citing Bogardus v. Commissioner, 302 U.S. 34 (1937). We therefore find that the amount of $ 10,000 constitutes a gift to petitioner from his brother in 1983. Hence we hold that it does not constitute self-employment income to petitioner. Concerning the $ 5,000 check, petitioner's brother testified that he intended some of the money he gave petitioner to be an advance, but was vague about *463 the amount of the advance and the nature of the services he expected in return. Petitioner was never employed by his brother, in fact, seldom saw him. Ernest Hughes refused petitioner's offers to repay him by means of services. Texas Eagle Investments, Inc., the entity from which the payments were made, was not a business, but essentially a checking account belonging to Ernest Hughes. Ernest Hughes may have intended the $ 5,000 to be an advance against petitioner's salary from Celestial Connection, a corporation formed by Ernest Hughes and two other shareholders. This Court, however, does not disregard a corporate entity which has been used to serve a business purpose and recharacterize it as a shareholder's alter ego unless the corporation is a sham or unreal. Moline Properties, Inc., v. Commissioner, 319 U.S. 436, 439 (1943). Petitioner received a salary from Celestial Connection, and work he did in selling computers or training purchasers to use them was done for that company, not for his brother. The term "advance" is, like many of the details of this case, ambiguous. Ernest Hughes testified that the $ 5,000 check was an advance of compensation. This *464 Court did not find him to be a credible witness and is convinced that he sought to recharacterize the payment retroactively for his own purposes. In the employment context, the maxims of experience suggest that a transfer of money is compensation. Commissioner v. Duberstein, supra at 287. In the family context, however, a transfer may well be a gift or a loan. In the case of a loan, a gift may be made if the loan is forgiven. It is more plausible to the Court that, under the facts of this case, the term "advance" meant that the $ 5,000 was intended to be repaid. We have found that petitioner never worked for his brother, nor did his brother intend to employ petitioner. Hence we find that the $ 5,000 check was intended to be a loan. It is clear that the obligation to repay was never forgiven, and neither party offered testimony on the question of whether or if it has become uncollectible. Consequently, we hold that the amount of $ 5,000 was not self-employment income to petitioner in 1983. Concerning the nature of the remaining amount of $ 2,928, there is scant evidence of the motive for payment, the mode of payment, or the existence of payment. The *465 circumstances of this case are extraordinary. Petitioner's brother, in late 1982 and early 1983, dispensed largesse to a number of friends and relatives, urging them to join him in Texas. Checks were bestowed like manna falling from above. No formal business terms were involved in the transfers to petitioner beyond the assurance "not to worry about the money". Later, petitioner's brother experienced financial difficulties, turned his records over to an accountant, and tried to remedy some of his problems by obtaining business expense deductions for amounts paid out. In view of our finding that petitioner was never expected to work for his brother and never did work for him, we hold that the amount of $ 2,928 was a gift to petitioner in 1983. 2. Failure to File a Timely Return
Respondent determined that petitioner was liable for an addition to tax under section 6651(a)(1), which imposes an addition for failure to file a timely return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proof. Rule 142(a); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985). A return made on the *466 basis of the calendar year must be filed on or before the 15th day of April following the close of the calendar year. Sec. 6072. Section 6081(a) permits the Commissioner to grant a reasonable extension of time within which to file a return. The first extension of 4 months is automatic upon the timely filing of a Form 4868. Sec. 1.6081-4, Income Tax Regs.
Petitioner applied for the automatic extension, and the due date for his Federal income tax return was consequently August 15, 1984. Petitioner filed his 1983 return on September 11, 1984, 27 days after its due date. He made no showing of reasonable cause. We hold that petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file a timely return. 3. Negligence
Respondent determined that petitioner is liable for the additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules or regulations. Paragraph (1) of section 6653(a) provides that if any portion of any underpayment is due to negligence, there shall be added to the tax an amount equal to 5 percent of the underpayment. Paragraph (2) provides for an addition to tax of 50 percent of the interest *467 payable under section 6601 with respect to the portion of the underpayment attributable to negligence. Negligence under section 6653(a) means lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner has the burden of proving that respondent's determination of the additions to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). We find that petitioner was negligent in failing to report interest income of $ 151, failing to report a pension distribution which exceeded his basis in the distribution by $ 358, and failing to timely file the return. In general, failure to report income is negligence within the meaning of section 6653(a), as is late filing of a return. Emmons v. Commissioner, 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Section 6653(g) specifically provides that failure to report interest income included on an information return is negligence. We find petitioner liable for the additions to tax under section 6653(a)(1) and (2) for negligence *468 as to unreported interest and pension payments. 4. Substantial Understatement
Respondent determined that petitioner is liable for an addition to tax for substantial understatement of tax liability pursuant to section 6661. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). We have found that petitioner understated his gross income by a total of $ 509. Petitioner's reported taxable income for 1983 was $ 6,400. The greater of 10 percent of the tax required to be shown on the return or $ 5,000 is $ 5,000. As the total understatement of income is less than $ 5,000, a Rule 155 computation will show that the tax thereon is less than $ 5,000. Thus, we hold that petitioner is not liable for the addition for substantial understatement of tax liability. Decision will be entered under Rule 155. Footnotes
1. By Order dated July 16, 1992, the Court granted respondent's motion to dismiss for failure to prosecute as to petitioner Ginger Stokes Hughes. Entry of decision against Ginger Stokes Hughes will be held in abeyance until disposition of the case of petitioner husband.↩