T.C. Summary Opinion 2019-18

UNITED STATES TAX COURT

RODRIGO KHO AND LORETA KHO, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10398-16S.                    Filed August 5, 2019.

Rodrigo Kho and Loreta Kho, pro sese.

<u>Jason T. Scott</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated February 3, 2016 (notice), respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2012 | $11,970 | $2,394 |
| 2013 | 15,785 | 3,157 |

The issues for decision are whether petitioners are: (1) entitled to charitable contribution deductions claimed on Schedules A, Itemized Deductions, for donations made in cash and/or property during the years in issue; (2) entitled to various deductions claimed on Schedules C, Profit or Loss From Business, for certain expenses related to a foster care business in excess of amounts allowed by respondent; (3) entitled to certain dependency exemption deductions claimed on their 2012 return; (4) entitled to education credits under section 25A for 2013; and (5) liable for a section 6662(a) accuracy-related penalty for either year in issue.

---

[1](...continued)
Code (Code), as amended and in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in California.

Petitioners have two children, a son and a daughter. During 2012 and 2013 petitioners and their son resided in a 1,665-square-foot single-family house along with two adult individuals with developmental disabilities who were placed with petitioners under a State-sponsored foster care program (foster care clients). Petitioners purchased the house in 2001 for $455,000. In 2008 petitioners added three additional bedrooms and an additional bathroom (575 square feet) to what had been a two bedroom, 1,090-square-foot house. Two of the additional bedrooms and the additional bathroom were used exclusively by the foster care clients; the third additional bedroom was used primarily, but not exclusively, by the foster care clients. One of the foster care clients moved into petitioners' house in July 2012, and the other moved into the house in August 2012.

During the years in issue one of the foster care clients routinely spent weekends at his parents' home. With the exception of certain holidays, the other foster care client lived with petitioners year round and accompanied them on family vacations and recreational outings. One of the foster care clients had special dietary requirements and restrictions.

A State agency paid petitioners $24,000 in 2012 and $48,000 in 2013 for providing foster care services to the foster care clients. The services petitioners provided to these individuals included purchasing their food, preparing their meals, and transporting them to their numerous doctors' appointments and other activities away from the house.

At all times relevant, petitioners owned a BMW and a Lexus. Petitioners did not maintain contemporaneous mileage logs for either vehicle; however, they did keep receipts for automobile repairs and gas. They also maintained receipts and/or records for expenses incurred for groceries, travel, meals and entertainment, repairs, and certain noncash charitable contributions.

Mrs. Kho was not employed during either year in issue. Mr. Kho was employed by various healthcare providers during both years.

Petitioners' timely filed joint 2012 and 2013 Federal income tax returns were prepared by a paid income tax return preparer. The 2012 and 2013 returns reported wages of $201,012 and $140,223, respectively, from Mr. Kho's employment. Petitioners claimed dependency exemption deductions for both of the foster care clients on their 2012 return but not on their 2013 return. Each return includes a Schedule C and a Schedule A. The income and deductions

attributable to the foster care services they provided for the foster care clients are shown on the Schedules C as follows:

|  | 2012 | 2013 |
|---|---|---|
| Income: | | |
| Gross receipts or sales | $24,000 | $48,000 |
| Gross income | 24,000 | 48,000 |
| Expenses: | | |
| Car and truck[1] | 6,943 | 13,848 |
| Contract labor | 595 | 1,895 |
| Depreciation and sec. 179 expense[2] | 7,465 | 7,788 |
| Legal and professional | 250 | 4,610 |
| Office | 109 | 810 |
| Rent or lease of vehicles, machinery, and equipment | 120 | 1,074 |
| Supplies | 3,097 | 6,050 |
| Taxes and licenses | 200 | -0- |
| Travel | 1,535 | 1,427 |
| Meals and entertainment | 1,875 | 4,363 |
| Utilities | 496 | -0- |
| Other[3] | 9,328 | 17,058 |
| Business use of home | 8,305 | 35,711 |
| Total | 40,318 | 94,634 |
| Net profit (loss) | (16,318) | (46,634) |

[1]Mrs. Kho testified that the car and truck expense for each year was computed on the basis of actual expenses; however, a review of the returns shows that the expenses were actually computed using the standard mileage rate. The Commissioner generally updates the optional standard mileage rate annually. See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2010-51, 2010-51 I.R.B. 883. For 2012 the rate was 55.5 cents per mile. See Notice 2012-1, sec. 2, 2012-2 I.R.B. 260, 260. For 2013 the rate was 56.5 cents per mile. See Notice 2012-72, sec. 2, 2012-50 I.R.B. 673, 673.

[2]Petitioners attached Form 4562, Depreciation and Amortization, to their 2012 return which shows how the $7,465 depreciation deduction was calculated.

[3]The deduction for "other expenses" for each year includes parking fees, education, postage, and groceries. For 2013 the deduction for "other expenses" also includes "salon for clients".

As relevant here, the Schedules A show charitable contribution deductions as follows:

| Year | Cash | Noncash |
|------|------|---------|
| 2012 | $4,200 | $1,300 |
| 2013 | 7,000 | 500 |

According to petitioners, they regularly donated money and property to "a church" and "some non-profit organization". Petitioners attached Form 8283, Noncash Charitable Contributions, to their 2012 return generally describing the noncash contributions as "BAGS OF CLOTHING HOUSEHOLD ITEMS TOYS". The fair market value of the donated property is reported as $1,300. They did not attach Form 8283 to their 2013 return. In support of their claim to the cash contributions, petitioners submitted bank records supporting a $100 deduction for cash contributions to a church.

Petitioners' 2013 return also includes Form 8863, Education Credits. On that form petitioners claimed an American Opportunity Tax Credit (AOTC) of $2,500, of which they treated $1,000 as refundable and $1,500 as nonrefundable.

According to the form, the credit is attributable to petitioners' daughter's education expenses at the University of Portland. A Form 1098-T, Tuition Statement, issued to petitioner's daughter by the university suggests that none of the qualifying tuition billed for 2012 was paid.

In the notice respondent: (1) disallowed all the deductions for Schedule A noncash charitable contributions for 2012 and 2013; (2) disallowed all but $10 of the deductions claimed on the 2012 and 2013 Schedules A for cash charitable contributions; (3) disallowed the dependency exemption deductions for the foster care clients for 2012; (4) disallowed in full or in part Schedule C deductions for car and truck expenses, depreciation, travel, meals and entertainment, utilities, and groceries; (5) disallowed $5,397 of the $8,305 deduction for expenses attributable to the business use of petitioners' home for 2012; (6) disallowed $27,260 of the $35,711 deduction for expenses attributable to the business use of petitioners' home for 2013; (7) disallowed the AOTC for 2013; and (8) imposed a section 6662(a) accuracy-related penalty on various grounds for each year. Some of the adjustments made in the notice are computational and will not be discussed.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2] Deductions and credits are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction or credit claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

## I. Charitable Contribution Deductions

Petitioners claimed a $5,500 charitable contribution deduction on their 2012 return, consisting of $4,200 in cash contributions and $1,300 in noncash contributions. Petitioners claimed a $7,500 charitable contribution deduction on their 2013 return, consisting of $7,000 in cash contributions and $500 in noncash contributions. According to respondent, petitioners are not entitled to any deduction greater than the amounts already allowed because they failed to substantiate the claimed deductions.

---

[2]Petitioners do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) are applicable here, and we proceed as though they are not.

Section 170 allows deductions for contributions made during a taxable year to qualifying organizations. Cash contributions must be substantiated by: (1) canceled checks or (2) receipts from the donee (showing the donee's name and the date and amount of the donation). Sec. 170(f)(17). In general, a gift of property must be substantiated by a receipt from the donee showing the donee's name, the date and location of the contribution, and a description of the property contributed. Sec. 1.170A-13(b)(1), Income Tax Regs.

Any contribution of $250 or more must also satisfy the requirement of section 1.170A-13(f)(1), Income Tax Regs., which provides that to claim a charitable contribution deduction of $250 or more, the taxpayer must substantiate the contribution with a contemporaneous written acknowledgment from the donee organization. Sec. 170(f)(8).

The contemporaneous written acknowledgment must contain: (1) a statement of the amount of cash or a description of any property other than cash contributed; (2) a statement as to whether the donee organization provided any goods or services in consideration for any property contributed; and (3) a description and good-faith estimate of the value of any provided goods or services, or if such goods or services consist of intangible religious benefits, a statement to that effect. See sec. 170(f)(8)(B); sec. 1.170A-13(f)(2), Income Tax Regs. A

written acknowledgment is contemporaneous if it is obtained by the taxpayer on or before the earlier of: (1) the date the taxpayer files the original return for the taxable year of the contribution or (2) the due date (including extensions) for filing the original return for the year. Sec. 170(f)(8)(C); sec. 1.170A-13(f)(3), Income Tax Regs.[3]

If a taxpayer makes a charitable contribution of property other than money and claims a deduction in excess of $500 with respect to the contribution of that item, then the taxpayer must maintain written records showing the manner of acquisition of the item and the approximate date of the acquisition. See sec. 1.170A-13(b)(3), Income Tax Regs.

A. Cash Charitable Contributions

With respect to the cash charitable contributions, petitioners provided a bank statement purporting to substantiate some of the cash contributions they claim to have made in 2012. The bank statement shows a number of checks in the amount of $5 that total $100 during 2012. Although the bank statement does not identify the payee, we find that the bank statement, along with petitioners'

---

[3]Separate contributions of less than $250 are not subject to the requirements of sec. 170(f)(8) regardless of whether the sum of the contributions made by a taxpayer to a donee organization during a taxable year equals $250 or more. See sec. 1.170A-13(f)(1), Income Tax Regs.

testimonies on the point, is sufficient to allow a $100 cash charitable contribution deduction for 2012. Petitioners did not otherwise provide any documentation to substantiate cash donations made in 2012 or 2013. Accordingly, petitioners are not entitled to a deduction for cash charitable contributions greater than $100 for 2012 and the amount respondent has already allowed for 2013.

B. Noncash Charitable Contributions

With respect to the noncash charitable contributions, petitioners attached Form 8283 to their 2012 return showing a contribution of property valued at $1,300 to the Cancer Control Society. According to Form 8283, petitioners purchased the donated property in February 2009. Petitioners provided a donation receipt from the Cancer Control Society describing the donated property as "Clothes, Household items, Toys". The donation receipt establishes nothing more than the fact that certain items, generally and vaguely described, were donated to the organization that issued the receipt. We are satisfied that a donation was made but nothing in the record supports the value that petitioners attributed to the donation. Instead, the record would allow for a noncash charitable contribution deduction of $100 for 2012, and we so find. Petitioners did not provide any substantiating documents for the noncash charitable contribution deduction for

2013. Accordingly, petitioners are not entitled to a noncash charitable contribution deduction for 2013.

II. Schedule C Deductions

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). To be ordinary the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be necessary an expense must be appropriate and helpful to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. A deduction normally is not allowed, however, for personal, living, or family expenses. Sec. 262(a). Whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has paid or incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be

made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Otherwise, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Respondent agrees that petitioners were engaged in a foster care trade or business during each year in issue; but according to respondent, petitioners failed to substantiate the amounts claimed for the disallowed Schedule C expenses or establish that they were ordinary and necessary trade or business expenses of that business.

A.  Car and Truck, Travel, Meals and Entertainment, Utilities, and Groceries

Petitioners acknowledge that the deductions claimed on the Schedule C for each year in issue include both personal and business expenses.  A taxpayer seeking a business expense deduction for what would ordinarily be considered personal living expenses, such as vehicle expenses and meals and entertainment expenses for oneself and one's dependents, must demonstrate that the expenditures were "different from or in excess of that which would have been made for the taxpayer's personal purposes."  Duggan v. Commissioner, 77 T.C. 911, 914 (1981) (quoting Sutter v. Commissioner, 21 T.C. 170, 173 (1953)).

Petitioners failed to show that their car and truck, travel, meals and entertainment, utilities, and groceries expenses, in excess of the amounts allowed

by respondent, were different from or exceeded those they would have spent for personal purposes. Accordingly, we find that the expenses in dispute were primarily for petitioners' and their son's personal benefit and any business purpose was distinctly secondary and incidental. See, e.g., Int'l Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970). Consequently, we conclude that the disputed amounts constitute nondeductible personal, living, or family expenses under section 262(a).

B. Depreciation and Business Use of Home

A taxpayer generally is not entitled to deduct any expenses related to a dwelling unit used as a residence during the taxable year. Sec. 280A(a). Section 280A(c)(1) provides an exception for certain business uses of a dwelling unit, provided the dwelling unit has a portion which is exclusively used on a regular basis:

> (A) as the principal place of business for any trade or business of the taxpayer,

> (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

> (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

1.  Depreciation

Petitioners claimed deductions of $7,465 and $7,788 for depreciation on Schedules C for 2012 and 2013, respectively. According to petitioners, the deductions for depreciation are attributable entirely to their use of their personal residence.

There is allowed as a depreciation deduction a reasonable allowance for the exhaustion and wear and tear (including obsolescence) of property used in a trade or business. Sec. 167(a). As relevant here, the basis for depreciation is the cost of the property. Secs. 167(c), 1011.

Respondent agrees that petitioners satisfy at least one of the exceptions set forth in section 280A(c)(1). Furthermore, petitioners have shown that two of the additional bedrooms and the additional bathroom were used exclusively and on a regular basis for their foster care business. As best we can tell from what has been submitted, we calculate that the additional bedrooms and the additional bathroom represent 70%, or 402.5 square feet, of the total square footage added during the renovation.

To claim the deductions for depreciation petitioners must establish the depreciable basis in the renovation. On the basis of the record, and specifically petitioners' testimony, we find that petitioners' cost of the renovation in 2008 was

$125,000.  See Cohan v. Commissioner, 39 F.2d at 543-544.  Accordingly, petitioners are entitled to deductions for depreciation for each year in issue in accordance with our findings above.  The appropriate depreciation calculation should be reflected in the parties' Rule 155 computations.

## 2.  Business Use of Home

Petitioners claimed deductions of $8,305 and $35,711 for the business use of their home on Schedules C for 2012 and 2013, respectively.  Petitioners reported that 33.33% and 66.67% of their home was used exclusively for business during 2012 and 2013, respectively.

As we determined above, petitioners used 402.5 square feet out of the home's total area of 1,665 square feet exclusively for business.  Thus, 24.17% of their home was used exclusively for business.  Accordingly, petitioners are entitled to deductions for the business use of their home for each year in issue in accordance with our findings above.  The appropriate deductions should be reflected in the parties' Rule 155 computations.

## III.  Dependency Exemption Deduction

Petitioners claimed a dependency exemption deduction for each foster care client for 2012.  Respondent contends that petitioners have not proved that their

foster care clients resided with them for more than one-half of 2012 and that they provided more than one-half of their foster care clients' support.

In computing taxable income section 151(c) allows as a deduction an exemption for each dependent of a taxpayer. Section 152(a) defines the term "dependent" to mean either a "qualifying child", see sec. 152(a)(1), (c), or a "qualifying relative", see sec. 152(a)(2), (d), of the taxpayer.

A. Qualifying Child

In order to be a taxpayer's "qualifying child", an individual must: (A) bear a specified relationship to the taxpayer, (B) have the same principal place of abode as the taxpayer for more than one-half of the taxable year, (C) meet certain age requirements, (D) have not provided more than one-half of his or her own support for the year, and, if married, (E) have not filed a joint return (other than only for a claim of refund) with his or her spouse. Sec. 152(c)(1). The term "child" includes an individual who is an eligible foster child of the taxpayer. Sec. 152(f)(1)(A)(ii). The term "eligible foster child" for the purposes of subparagraph (A)(ii) means an individual who is placed with the taxpayer by an authorized placement agency or by judgment, decree, or other order of any court of competent jurisdiction. Sec. 152(f)(1)(c).

Petitioners acknowledged that their foster care clients did not have the same principal place of abode as petitioners for more than one-half of 2012. It follows that their foster care clients were not petitioners' qualifying children within the meaning of section 152(c).

B. Qualifying Relative

The term "qualifying relative" means an individual: (A) who bears a specified relationship to the taxpayer, (B) whose gross income is less than the exemption amount, (C) with respect to whom the taxpayer provides over one-half of the individual's support, and (D) who is not a qualifying child of the taxpayer or of any other taxpayer. Sec. 152(d)(1).

In applying the support test, we evaluate the amount of support furnished by the taxpayer as compared to the total amount of support received by the claimed dependent from all sources. Turecamo v. Commissioner, 554 F.2d 564, 569 (2d Cir. 1977), aff'g 64 T.C. 720 (1975); sec. 1.152-1(a)(2)(i), Income Tax Regs. The taxpayer must initially demonstrate, by competent evidence, the total amount of support furnished by all sources for the taxable year in issue. Blanco v. Commissioner, 56 T.C. 512, 514 (1971). Otherwise, the taxpayer cannot be said to have established that he provided more than one-half of the support for the claimed dependent. Id. at 514-515.

Support provided by a third party, such as a Federal or State agency, is not considered support furnished by the taxpayer.  See, e.g., Gulvin v. Commissioner, 644 F.2d 2 (5th Cir. 1981), aff'g T.C. Memo. 1980-111; Lutter v. Commissioner, 61 T.C. 685 (1974), aff'd, 514 F.2d 1095 (7th Cir. 1975); Williams v. Commissioner, T.C. Memo. 1996-126, aff'd without published opinion, 119 F.3d 10 (11th Cir. 1997).

Petitioners paid various expenses on behalf of their foster care clients during 2012; however, they introduced no evidence of the total support furnished for each.  Moreover, a State agency paid petitioners $24,000 in 2012 for providing foster care services to their foster care clients.  As noted above, the State agency payments do not constitute support by petitioners.  See Lutter v. Commissioner, 61 T.C. 685.  Consequently, petitioners have not established that they provided over one half of their foster care clients' support during 2012.  It follows that petitioners' foster care clients were not their qualifying relatives within the meaning of section 152(d).  Accordingly, petitioners are not entitled to the dependency exemption deductions here in dispute, and respondent's disallowances of those deductions are sustained.

## IV. AOTC

On Form 8863 attached to their 2013 return petitioners claimed an AOTC of $2,500, of which they treated $1,000 as refundable and $1,500 as nonrefundable. According to that form, the credit is attributable to petitioners' daughter's education expenses at the University of Portland.

The AOTC is a modified version of the Hope Scholarship Credit. See sec. 25A(i). It provides for a credit for qualified tuition and related expenses paid by a taxpayer for education furnished to an eligible student. The credit is equal to "(A) 100 percent of so much of the qualified tuition and related expenses paid by the taxpayer during the taxable year * * * as does not exceed $2,000, plus (B) 25 percent of such expenses so paid as exceeds $2,000 but does not exceed $4,000." Sec. 25A(i)(1). The statute defines "qualified tuition and related expenses" to include tuition and fees at an eligible educational institution that the taxpayer, the taxpayer's spouse, or the taxpayer's dependent attends, as well as course materials. Sec. 25A(f)(1), (i)(3).

Petitioners did not provide any canceled checks, credit card statements, bank account statements, account statements from the University of Portland, or any other document that shows that they paid any of the "qualified tuition and related expenses" shown on the Form 8863. The Form 1098-T suggests that

nothing was paid. That being so, petitioners are not entitled to the AOTC here in dispute, and respondent's disallowance of the credit is sustained.

## V.  Section 6662(a) Accuracy-Related Penalties

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty for either year in issue. As relevant here, section 6662(a) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's: (1) negligence or disregard of rules or regulations or (2) substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement of income tax" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs. Respondent bears the burden of production with respect to the imposition of the section 6662(a) accuracy-related penalties. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the

assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Secretary may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained no later than the date the notice of deficiency is issued or the date the Commissioner files an answer or amended answer asserting the penalty. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; see also Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

The section 6662(a) accuracy-related penalties determined in the notice were properly approved as required by section 6751(b)(1). The record includes a Civil Penalty Approval Form, approving imposition of accuracy-related penalties against petitioners for 2012 and 2013 and executed by the Internal Revenue Service tax examiner's immediate supervisor before the date the notice was issued. Respondent has proven sufficient facts to satisfy the burden of production as to that requirement.

Petitioners did not present adequate documents substantiating their claimed charitable contributions for 2012 and 2013 or their payment of "qualified tuition and related expenses" shown on the Form 8863. They also claimed significant personal expenses as Schedule C expenses for the years in issue. Therefore,

respondent has met his burden of production with respect to the imposition of section 6662(a) accuracy-related penalties.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Petitioners bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayments. See Higbee v. Commissioner, 116 T.C. at 449.

Considering all the facts and circumstances, including petitioners' good-faith reliance on the assistance of an accountant in preparing their tax returns for the years in issue, we conclude that petitioners have shown reasonable cause and that they acted in good faith in respect of the portions of the underpayments that are attributable to the disallowance of deductions for depreciation and business use of home expenses claimed on their Schedules C for 2012 and 2013 and the

dependency exemption deductions claimed for 2012. Therefore, we hold that petitioners are not liable for section 6662(a) accuracy-related penalties in respect of those portions of the underpayments. In contrast, petitioners' explanations for claiming personal expenses as business expenses on their Schedules C and their failure to substantiate payments of the "qualified tuition and related expenses" shown on the Form 8863 and charitable contributions for 2012 and 2013 do not demonstrate that they acted with reasonable cause and in good faith with respect to the portions of the underpayments attributable to those adjustments, and we, therefore, conclude that petitioners are liable for the penalties in respect of those portions of the underpayments.

To reflect the foregoing,

Decision will be entered under

Rule 155.